IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HUNT CONSTRUCTION GROUP, INC.,<br>   an Indiana corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>COBB MECHANICAL CONTRACTORS, INC.,<br>   a Colorado corporation,<br><br>and<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br>   a Massachusetts corporation,<br><br>   Defendants. | Case No. 1:17-CV-215-LY |

**PLAINTIFF HUNT CONSTRUCTION GROUP, INC.'S ANSWER TO
DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S COUNTERCLAIM**

Subject to its previously filed motion to dismiss pursuant to Rule 12(b)(6), Plaintiff Hunt Construction Group, Inc. ("Hunt") respectfully submits the following Answer to the Counterclaim filed by Defendant Liberty Mutual Insurance Company ("the Surety"). Any allegations in the Counterclaim by the Surety not specifically admitted or addressed herein are denied.

**THE PARTIES**

83. **ALLEGATIONS:** Liberty Mutual is incorporated under the laws of the State of Massachusetts and has its principal place of business in Boston, Massachusetts. Liberty Mutual is registered to do business in Texas and regularly does business in Texas.

**ANSWER:** Admitted.

84. **ALLEGATIONS:** Hunt is incorporated under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

1

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

85. **ALLEGATIONS:** This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. 1332(a) and (c) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

**ANSWER:** Admitted.

86. **ALLEGATIONS:** Venue is proper in this District because the dispute arose in this District.

**ANSWER:** Admitted.

## FACTUAL BACKGROUND

87. **ALLEGATIONS:** On July 20, 2015, Hunt entered into a Subcontract with Cobb (the "subcontract") for a lump sum of $30,938,190.00.

**ANSWER:** Admitted. Hunt refers to the Subcontract for its full meaning and effect.

88. **ALLEGATIONS:** On August 28, 2015, the Surety entered into a subcontract performance bond agreement ("the bond"), naming Cobb Mechanical Contractors, Inc. ("Cobb") as principal, and Hunt as obligee.

**ANSWER:** Hunt admits that the Surety issued a subcontract performance bond (the "Bond") naming Cobb Mechanical Contractors, Inc. ("Cobb") as principal and Hunt as obligee, but denies that the Bond was entered into on August 28, 2015. The Bond states that it was "[s]igned and sealed this 26th day of August, 2015."

89. **ALLEGATIONS:** The Bond states in ¶ 2 that the "subcontract is by reference made a part hereof…"

**ANSWER:** Hunt denies that the language quoted in Paragraph 89 appears in ¶ 2 of the Bond. Rather, the quoted language appears in the preamble section of the Bond.

90. **ALLEGATIONS:** The Subcontract provides for a "mutually agreed upon CPM schedule." (Subcontract, Attachment II, ¶ A(1)(q)).

**ANSWER:** Hunt admits that the words quoted in Paragraph 90 appear in Attachment II, ¶ A(1)(q) of the Subcontract but denies the remaining allegations of Paragraph 90 and refers to the Subcontract for its full meaning and effect.

91. **ALLEGATIONS:** The Bond requires Hunt to perform its obligations under the Subcontract.

**ANSWER:** Denied.

92. **ALLEGATIONS:** As a condition precedent, the Bond requires Cobb to actually be in default under the Subcontract; Hunt to declare Cobb in default under the Subcontract; and Hunt to perform its obligations thereunder.

**ANSWER:** Hunt admits that the Bond provides those conditions precedent to certain obligations of the Surety. Hunt refers to the Bond for its full meaning and effect and denies the remaining allegations in Paragraph 92.

93. **ALLEGATIONS:** If the conditions precedent mentioned above are met, the Bond requires Hunt to give the Surety an opportunity to remedy the default, subject to the provisions of paragraph 3 therein, which includes but is not limited to, making available for the Surety the "balance of the subcontract price" as defined in the Bond.

**ANSWER:** Hunt denies that the Bond states that Hunt must "give the Surety an opportunity to remedy the default" and that the Bond states that Hunt must "mak[e] available for the Surety the 'balance of the subcontract price' as defined in the Bond." Hunt refers to the Bond for its full meaning and effect and denies the remaining allegations in Paragraph 93.

94. **ALLEGATIONS:** Hunt declared a "partial termination" of Cobb.

**ANSWER:** Hunt admits that it declared a partial termination of Cobb's Subcontract.

95. **ALLEGATIONS:** Hunt did not provide proper notice of default and opportunity to cure to Cobb.

**ANSWER:** Denied.

96. **ALLEGATIONS:** Hunt did not make available the "balance of the subcontract price" to the Surety, and did not give the Surety an opportunity to remedy the default.

3

**ANSWER:** Denied.

97. **ALLEGATIONS:** Instead, Hunt engaged another contractor, Brandt, on a time and material basis, to perform work on the podium.

**ANSWER:** Hunt admits that, after the partial termination, it entered into a contract with Brandt to perform work on the podium on a time and material basis. Hunt denies the remaining allegations in Paragraph 97.

98. **ALLEGATIONS:** Hunt did not give the Surety "reasonable notice," as required under the Bond, and did not first give the Surety a meaningful opportunity to perform or to mitigate damages.

**ANSWER:** Denied.

99. **ALLEGATIONS:** At the time of notice of default, Cobb was not in material default of the subcontract.

**ANSWER:** Denied.

100. **ALLEGATIONS:** All conditions precedent to the Surety's counterclaims have been performed or waived.

**ANSWER:** Denied.

### COUNT I – BREACH OF CONTRACT

101. **ALLEGATIONS:** The Surety incorporates by reference paragraphs 83-100 above in this Count I as though fully restated herein.

**ANSWER:** Hunt hereby incorporates its answers to Paragraphs 83-100 of the Surety's Counterclaim as though fully restated herein.

102. **ALLEGATIONS:** Hunt breached its obligations under the Bond by failing to perform its obligations under the Subcontract.

**ANSWER:** Denied.

103. **ALLEGATIONS:** Hunt failed to create a Project Schedule.

**ANSWER:** Denied.

4

104. **ALLEGATIONS:** Hunt did not achieve a "mutually agreed upon CPM schedule."

**ANSWER:** Denied.

105. **ALLEGATIONS:** Hunt failed to properly declare Cobb in default. This constitutes a material breach of Hunt's obligations under the Bond.

**ANSWER:** Denied.

106. **ALLEGATIONS:** Hunt did not provide a meaningful opportunity to Liberty to perform or to mitigate damages. Instead, Hunt unilaterally engaged another contractor, Brandt, apparently on a time and materials basis, to take over work on the podium. This action creates a multitude of problems and significantly escalates damages. This constitutes a material breach of Hunt's obligations under the Bond.

**ANSWER:** Hunt admits that it engaged Brandt on a time and materials basis to take over Cobb's Subcontract scope of work on the Podium. Hunt denies the remaining allegations in Paragraph 106.

107. **ALLEGATIONS:** Hunt did not make available the balance of the subcontract price to Liberty, which constitutes a material default of Hunt's obligations under the performance bond. The Surety has suffered and continues to suffer substantial damages as a direct result of this material breach of Hunt's obligations under the Bond.

**ANSWER:** Denied.

108. **ALLEGATIONS:** Hunt improperly declared a "partial termination". Effectively Hunt de-scoped work but did so under a claim of a partial termination. This declaration was not only wrongful but caused the Surety significant damages, which are still accruing. This "partial termination" was a material breach of Hunt's obligations under the Bond, and had the effect of releasing the Bond.

**ANSWER:** Hunt admits that it declared a partial termination of Cobb's Subcontract but denies that the partial termination was improper. Hunt denies the remaining allegations in Paragraph 108.

109. **ALLEGATIONS:** Hunt's improper unilateral completion with Brandt does not constitute "reasonable costs," as required by the terms of the performance bond. This constitutes a material breach of Hunt's obligations under the Bond.

**ANSWER:** Denied.

110. **ALLEGATIONS:** Due to Hunt's breaches of its obligations under the Bond, the Surety has suffered and continues to suffer significant damages, including costs related to consulting fees and attorney's fees, which were a direct cause of Hunt's breaches of its obligations under the Bond. The Surety's damages are still accruing.

**ANSWER:** Denied.

## COUNT II – DECLARATORY JUDGMENT

111 – 113.  Hunt has moved to dismiss this Count II of Liberty's Counterclaim, and thus no answer is presently required.

## COUNT III – ATTORNEY'S FEES AND COSTS

114. **ALLEGATIONS:** Pursuant to Texas Civil Practices & Remedies Code 38.001, *et. seq.*, applicable statues, and the contracts, the Surety is entitled to recover its attorney's fees and costs.

**ANSWER:** Denied.

## AFFIRMATIVE DEFENSES

1. The Surety is estopped from asserting that proper notice was not given and that it was not given an opportunity to mitigate its damages.

2. The Surety is estopped from denying that there was a valid schedule to which Cobb was bound.

3. If and to the extent that the Surety had any right to determine the course of remediation as a condition precedent to its obligation to pay Hunt under the Bond, the Surety waived that right.

4. The Surety's claims fail under the doctrines of unclean hands and *in pari delicto*.

5. The Surety's claims fail because it encouraged and abetted Cobb's breaches.

6. Hunt's liability for breach of the Bond, if any, is excused by the Surety's prior breaches.

## ADDITIONAL DEFENSES

7. The Surety's Counts I, II, and III fail to state claims upon which relief can be granted.

## PRAYER FOR RELIEF

WHEREFORE, Hunt requests that the Surety's Counterclaim be dismissed in its entirety, that the Surety take nothing thereunder, that the Court award Hunt its reasonable attorneys' fees and costs pursuant to applicable Texas law, and that the Court award such other and further relief as the Court deems equitable and just.

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/ Casey Low
Casey Low
401 Congress Avenue
Suite 1700
Austin, Texas 78701
(512) 580-9616
Casey.Low@pillsburylaw.com

Steven G.M. Stein (*admitted pro hac vice*)
C. Steven Tomashefsky (*admitted pro hac vice*)
STEIN RAY LLP
222 West Adams St.
Suite 1800
Chicago, Illinois 60606
(312) 641-3700
sstein@steinraylaw.com
stomashefsky@steinraylaw.com

**ATTORNEYS FOR PLAINTIFF
HUNT CONSTRUCTION GROUP, INC.**

Dated: April 19, 2017

## CERTIFICATE OF SERVICE

      I hereby certify that on April 19, 2017, I electronically submitted a true and correct copy of the above with the clerk of court for the U.S. District Court, Western District of Texas. I hereby certify that I have served all parties of record below in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                    /s/ *Casey Low*
                                                    Casey Low


Michael L. Burnett
GREENBURG TRAURIG, LLC
1000 Louisiana Street, Suite 1799
Houston, TX  77002
burnetm@gtlaw.com

ATTORNEY FOR DEFENDANT
COBB MECHANICAL CONTRACTORS, INC.


Keith A. Langley
LANGLEY, LLP
1301 Solana Blvd., Bldg. 1, Suite 1545
Westlake, TX 76262
klangley@l-llp.com

ATTORNEY FOR LIBERTY MUTUAL
INSURANCE COMPANY