**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **HUNT CONSTRUCTION GROUP, INC.** | § | |
| | § | |
| **VS.** | § | **NO. A-17-CV-215-LY** |
| | § | |
| **COBB MECH. CONTRACTORS, INC.** | § | |
| **and LIBERTY MUTUAL INS. CO.** | § | |

## ORDER

Before the Court are Defendant Liberty Mutual Insurance Company's Opposed Emergency

Motion to Compel Access to Construction Project (Dkt. No. 16); Hunt's Response (Dkt. No. 20);

Liberty Mutual's Reply (Dkt. No. 23); Liberty Mutual's Post-hearing Brief (Dkt. No. 27); Hunt's

Response (Dkt. No. 29); and Liberty Mutual's Reply (Dkt. No. 30). The Court held a hearing on May

2, 2017, where it considered the arguments of the parties. The parties were also permitted to submit

post-hearing supplemental briefing.

### I. Background

Hunt Construction Group Inc. is the general contractor for the Fairmont Austin Hotel

construction project. Hunt's contract with the owner of the Fairmont project currently requires that

the hotel will be substantially complete by August 2017. On July 20, 2015, Hunt entered into a

subcontract with Cobb Mechanical Contractors, Inc., for the project's plumbing, piping, and HVAC

work on the podium and tower portions of the project, for the fixed sum of $30,938,190. Pursuant

to the subcontract, Cobb obtained a performance bond from Liberty Mutual Insurance Company in

the principal sum of $30,938,190, with Hunt as the obligee. The purpose of the performance bond

was to provide for completion of the subcontractor's scope of work in the event the subcontractor

defaults.

Starting In July 2016, Hunt issued a series of default notices to Cobb, and on November 18, 2016, Hunt terminated Cobb's subcontract with regard to the podium portion of the project, while leaving in place the subcontract on the tower portion. At the same time, Hunt notified Liberty of the termination and stated that it intended to arrange for another contractor to perform the remainder of Cobb's obligations on the podium and to correct Cobb's defective work on the podium.

Beginning in early September 2016, prior to Cobb's partial termination, Liberty and its consultant, Lin Heath, began visiting the project site to gather information, as a result of Hunt's notices of default. Based on a report provided to Liberty's counsel by Heath, which attributed fault for the delays to Hunt, not Cobb, Liberty denied Hunt's claim under the performance bond. Given that the claim on the bond was denied, Hunt notified Liberty that it would no longer permit Liberty unrestricted access to the site, and set significant conditions on any visits by Liberty. Liberty did not agree that its access should be so restricted and has not sent its representatives to visit the site since Hunt imposed these conditions. Instead, it filed the motion now before the Court.

Liberty Mutual contends that it is entitled to access to the construction site because Hunt has continued to send Cobb notices contending that Cobb is in default under its subcontract with regard to Cobb's continuing work on the tower, and Liberty argues that it must be allowed to investigate those allegations. It further asserts that Hunt is blocking access to the site to hamper Liberty's investigations and hide Hunt's mistakes. Liberty Mutual further contends that it has requested access on specific days and for specific purposes, and that Hunt has still denied access. Hunt's position is that allowing Liberty daily unfettered access to the site is dangerous, and unwarranted. It further argues that it has not made a demand on the performance bond with regard to Cobb's work on the

tower, and that Liberty's demand for unsupervised daily access to the job site is unprecedented, particularly in light of the fact that there is now litigation pending.[1]

## II. Analysis

This case is in its preliminary stages, with the parties having not even commenced discovery yet. Further, Liberty Mutual is demanding access to the construction site through this motion, yet it has not served a formal discovery request upon Hunt seeking that access. While it is true that Hunt allowed Liberty Mutual virtually unfettered access to the project in January and February 2017, that was prior to Liberty's denial of Hunt's claim, and prior to the lawsuit having been filed. When the Court pressed Liberty Mutual for the legal support for its demand for access to the site, it pointed to Rule 34 and also asserted that there was an implied right of access that derives from the surety bond. The only authority it cites for this latter argument, however, is an article in the Bond Default Manual; it cites no case law. *See* Dkt. No. 27 at 5. Further, as Liberty Mutual itself notes, any implied right of access is premised on the surety's need to investigate to decide how to respond to a claim on its bond. Here, Hunt granted Liberty Mutual generous access to the site to allow Liberty Mutual to investigate Hunt's claim on the bond. As Hunt notes, once Liberty Mutual denied Hunt's claim, Liberty Mutual's rationale for needing access to adjust the claim disappeared. Further, though Hunt has apparently sent many letters to Cobb regarding Cobb's work on the tower, to date Hunt has not made a claim on the bond with regard to that work, so Liberty Mutual cannot yet justify a demand for access to the tower on those letters, as they do not amount to a demand on the bond.

---

[1] Liberty's motion also sought a Rule 16(a) conference. Judge Yeakel's practice is to conduct pretrial conferences himself, and thus this request is **DENIED.**

Thus, the only valid legal basis for Liberty Mutual's demand for access would have to stem from a discovery request related to this lawsuit. The pertinent rule is Rule 34, which provides in relevant part:

(a)    **In General.** A party may serve on any other party a request within the scope of Rule 26(b)

***

(2)    to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Notably, Liberty Mutual has not served on Hunt a request for access to the site pursuant to Rule 34, so it is questionable whether the matter presented in Liberty Mutual's motion is even ripe at this point.

Having said this, as noted at the outset, Hunt has agreed to allow Liberty Mutual access to the site on more limited terms than Liberty Mutual would like, and it continues to offer access on those terms. Given the lack of any other basis on which the Court may legally compel Hunt to allow Liberty Mutual access to the construction site, the Court will limit its order here to that which has been offered voluntarily by Hunt, with one minor exception, relating to the notice required to visit specific areas of the site, as reflected in numbered paragraph 4, below.

Accordingly, IT IS ORDERED that Hunt permit representatives of Liberty Mutual access to the project on the following terms:

1.    A maximum of two employees or representatives of Liberty shall be permitted to enter the project site not more than two days per calendar week, for a maximum of seven hours per day. The Liberty representatives shall remain together while on the project site.

2. While on the project site, Liberty or its representatives may make notes and take photographs, but they shall not disturb, interrupt, hinder, or converse with any project personnel other than Cobb personnel or designated Hunt personnel.

3. Hunt shall accompany all Liberty personnel or the personnel of its representatives at all times while on the project site. Liberty and its representatives shall not enter any areas of the project site without being accompanied by Hunt personnel.

4. Liberty and its representatives shall provide notice, not less than 48 hours in advance, of the date and time they wish to visit the site. Such notice shall include a statement of the areas of the project that Liberty wishes to observe during the visit. Hunt will provide personnel to accompany Liberty and its representatives on the requested date. Though Liberty must identify areas it wishes to visit in its advance notification, if during a visit Liberty's investigation leads it to wish to visit additional areas reasonably within its area of investigation, Hunt shall make all reasonable efforts to permit such review, unless doing so is inappropriate for the reasons described in the next sentence. Hunt will make all reasonable efforts to provide access to the requested areas during the visit, but in the event the areas Liberty or its representatives wish to visit are not appropriate for the presence of third parties, because of reasons of safety or ongoing testing, Hunt shall make these areas available to Liberty and its representatives within 24 hours from the date requested. Liberty and its representatives shall be allowed an additional seven hour day of inspection for each instance when, after proper notice has been given, Hunt denies access on the bases outlined above.

SIGNED this 18th day of May, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE