

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

HUNT CONSTRUCTION GROUP, INC., §
      PLAINTIFF, §
      AND COUNTER DEFENDANT, §
       §
V. §   CIVIL NO. A-17-CV-00215-LY
       §
COBB MECHANICAL §
CONTRACTORS, INC., AND §
LIBERTY MUTUAL §
INSURANCE COMPANY, §
      DEFENDANTS, §
       §
LIBERTY MUTUAL §
INSURANCE COMPANY, §
      COUNTER PLAINTIFF. §

## ORDER DENYING MOTION TO DISMISS

Before the court in the above styled and numbered diversity action is Plaintiff Hunt Construction Group, Inc.'s ("Hunt") Motion to Dismiss Count II of Defendant Liberty Mutual Insurance Company's Counterclaim filed April 19, 2017 (Clerk's Document No. 18), Defendant Liberty Mutual Insurance Company's ("Liberty") Response in Opposition to Plaintiff's Motion to Dismiss Count II of Defendant Liberty Mutual Insurance Company's Counterclaim filed May 3, 2017 (Clerk's Document No. 26), and Hunt's Reply in Support of its Motion to Dismiss Count II of Defendant Liberty Mutual Insurance Company's Counterclaim filed May 10, 2017 (Clerk's Document No. 28). Having considered the motion, response, reply, the case file, and the applicable law, the court will deny the motion.

### Background

This action is related to ongoing construction of the Fairmont Hotel in Austin, Texas. Once completed, the Fairmont will consist of an underground garage, a seven-story "podium,"

which will contain lobbies, meeting rooms, restaurants, and other amenity spaces, topped by a 31-story tower, which will contain guest rooms.

Hunt, an Indiana company and general contractor for large building projects, executed a contract with the owner of the Fairmont to construct the hotel ("Prime Contract").  On July 20, 2015, Hunt subcontracted with Cobb Mechanical Contractors, Inc. ("Cobb"), a Colorado company, for Cobb to install mechanical systems in both the podium and the tower of the Fairmont for a cost of $30,938,190 ("Subcontract").  Cobb is in the business of designing and installing plumbing, piping, and heating-ventilating-air-conditioning systems.  Pursuant to the Subcontract, Cobb obtained a performance bond from Liberty ("Performance Bond"), for Hunt's benefit in the amount of $30,938,190.[1]  The Performance Bond was to guaranty Cobb's performance of its obligations under the Subcontract and to compensate Hunt for its costs and expenses should Cobb fail to meet its obligations under the Subcontract.

Hunt alleges that in June 2016, it became concerned that Cobb was falling behind on the construction schedule, and in July 2016, sent Cobb formal notice that Cobb needed to take steps to get within schedule.  When things failed to improve, on November 18, 2016, Hunt served Cobb with a Notice of Default of Subcontract Obligations and Notice of Termination ("Termination Notice").  By the Termination Notice Hunt informed Cobb that Hunt was exercising its right under the Subcontract and terminating the portion of Cobb's work related to the podium of the Fairmont.  The Termination Notice directed Cobb to stop working on the podium within three days but to continue working on the tower.  Hunt replaced Cobb with

---

[1]   Liberty Mutual issued its Subcontract Performance Bond No. 906001924 to Cobb for Hunt's benefit ("Performance Bond").  The Performance Bond identifies the Subcontract and states that the Subcontract "is by reference made a part hereof."

another subcontractor to correct Cobb's work and perform the remainder of the mechanical work on the podium.

On December 7, 2016, Cobb served Hunt with a Notice of Claim, seeking in excess of $8,000,000 from Hunt, alleging that Hunt wrongfully terminated Cobb's work on the podium of the Fairmont. On December 30, Hunt denied Cobb's claim.

On March 7, 2017, Hunt filed this action against Cobb and Liberty, seeking not less than $27 million in damages resulting from Cobb's delays and defective work on the Fairmont. Specifically Hunt alleges Liberty breached the terms of the Performance Bond and Hunt is therefore entitled to damages. Liberty answered, filed a breach-of-contract counterclaim against Hunt, and seeks a declaration from the court that the Performance Bond is null and void or that Liberty's obligations under the Bond are discharged to the extent of the breaches by Hunt and the resulting damages.

Hunt now moves to dismiss "Count II" of Liberty's counterclaim ("Count II") complaining that Count II raises only redundant issues for which no relief can be granted.

Count II in relevant part alleges:

> In order to resolve this controversy, the Surety requests that, pursuant to 28 U.S.C. § 2201 and § 2202, this court declares the respective rights and duties of the parties in this matter, including, in particular, that the court declare that:
>
> > a. The Bond is null & void, and the surety is discharged of any duty on the Bond, because of the material breaches by Hunt;
> >
> > b. Alternatively, the Surety's obligations under the Bond are discharged to the extent of the breaches by Hunt and the resulting damages;
> >
> > c. Hunt failed to give adequate notice and an adequate opportunity to cure the alleged issues;

3

    d.  Hunt's improper unilateral completion with Brandt does not constitute "reasonable costs," as required by the terms of the performance bond.

    e.  The Surety is exonerated from any obligations under the Bond because of Hunt's material alterations of the bonded contract.

## Analysis

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court considers the complaint in its entirety, together with "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007.)

Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," but this standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a pleading seeking relief must contain sufficient factual matter, so that when accepted as true, it "state[s] a claim to relief that is plausible on its face." *Id.* at 570.

This plausibility standard is not a "probability requirement," but does impose a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "a court must accept as true all "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but has not 'show[n]'–'that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### *Declaratory relief*

"The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995). "It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112 (1962). "However, though the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v Louisiana Farm Bureau Federation, Inc.,* 996 F.2d 774, 778 (5th Cir. 1993). "Courts in the Fifth Circuit have regularly rejected declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit." *Burlington Ins. Co. v. Ranger Specialized Glass, Inc.,* No. 4:12-CV-1759, 2012 WL 6569774, *2 (S.D. Tex. Dec. 17, 2012).

Hunt argues Count II is redundant, and should be dismissed because it addresses issues raised by Hunt's direct claims against Liberty and is within the purview of Liberty's affirmative defenses. Hunt contends it is entitled to dismissal because the issues raised in Count II will be resolved as part of its allegations. *See* e.g. *Flanagan v. Chesapeake Expl., LLC,* No 3:15-CV-0222-B, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015).

Liberty responds that Count II addresses the portion of the Performance Bond addressed by Hunt's claims as well as any possible future controversy in regard to the continuing tower portion of the Performance Bond. Liberty argues that Hunt's original complaint improperly divides the Performance Bond in two, whereas Count II encompasses the entirety of the contract. Liberty contends the court should exercise its discretion and allow its request for declaratory relief to proceed based on the non-redundant future issues raised. *See e.g. 5436, LLC v. CBS Corporation*, No. CIV.A. H-08-3097, 2009 WL 3378379, at *17 (S.D. Tex. Oct. 16, 2009); *Trammel Crow Residential Co. v. Virginia Sur. Co.*, 643 F. Supp 2d 844, 856 (N.D. Tex. 2008).

At this juncture in the proceedings, and construing the counterclaim in a light most favorable to Liberty, the court disagrees that Count II mirrors the affirmative defenses Liberty alleged in response to Hunt's original claims. The issues raised in Hunt's original claims, and Liberty's affirmative defenses, address only the portion of the Performance Bond concerning the podium. The issues raised in Count II address the Performance Bond in its entirety. Litigation of the issues raised by Hunt will not resolve the issues raised by Count II regarding the continuing contract and the future relationship among the parties under the contract.

**Conclusion**

The court will exercise its discretion and allow Liberty's request for declaratory relief to proceed.

**IT IS ORDERED** that Plaintiff Hunt Construction Group, Inc.'s Motion to Dismiss Count II of Defendant Liberty Mutual Insurance Company's Counterclaim filed April 19, 2017 (Clerk's Document No. 18) is **DENIED**.

SIGNED this **2nd** day of June, 2017.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

7