IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2017 JUN 29  AM 11: 18

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | | |
|---|---|---|
| HUNT CONSTRUCTION GROUP, INC., | § | |
| PLAINTIFF AND | § | |
| COUNTERDEFENDANT, | § | |
| | § | |
| V. | § | CIVIL NO. A-17-CV-00215-LY |
| | § | |
| COBB MECHANICAL | § | |
| CONTRACTORS, INC., AND | § | |
| LIBERTY MUTUAL | § | |
| INSURANCE COMPANY, | § | |
| DEFENDANTS AND | § | |
| COUNTERPLAINTIFFS. | § | |
| | § | |

## ORDER

Before the court in the above styled and numbered cause is Plaintiff Hunt Construction

Group, Inc.'s ("Hunt") Motion to Stay and Dismiss Arbitration Proceedings filed March 10, 2017

(Clerk's Document No. 7), Defendant Cobb Mechanical Contractors, Inc.'s ("Cobb") Response to

Plaintiff's Motion to Stay and Dismiss Arbitration Proceedings filed March 17, 2017 (Clerk's

Document No. 10), and Hunt's Reply Memorandum In Support of Motion to Stay and Dismiss

Arbitration Proceedings filed March 24, 2017 (Clerk's Document No. 11). Also before the court is

Hunt's Notice of AAA Action filed April 3, 2017 (Clerk's Document No. 14) and Cobb's Response

to Plaintiff's Notice of AA Action filed April 4, 2017 (Clerk's Document No. 15).

**Background**

This action is related to construction of the Fairmont Hotel in Austin, Texas. Once

completed, the Fairmont will consist of (1) an underground garage, (2) a seven-story "podium,"

containing lobbies, meeting rooms, restaurants, and other amenity spaces, and (3) topped by a 31-story tower that will contain guest rooms.

Hunt, an Indiana company and general contractor for large building projects, executed a contract with the owner of the Fairmont to construct the hotel ("Prime Contract"). On July 20, 2015, Hunt subcontracted with Cobb, a Colorado company, for Cobb to install mechanical systems in both the podium and the tower for a cost of $30,938,190 ("Subcontract"). Cobb is in the business of designing and installing plumbing, piping, and heating-ventilating-air-conditioning systems. Pursuant to the Subcontract, Cobb obtained a performance bond from Defendant Liberty Mutual Insurance Company for Hunt's benefit in the amount of $30,938,190.[1] The Performance Bond was to guaranty Cobb's performance of its obligations under the Subcontract and to compensate Hunt for its costs and expenses should Cobb fail to meet its obligations under the Subcontract.

Hunt alleges that in June 2016 it became concerned that Cobb was falling behind on the construction schedule and, in July 2016, sent Cobb formal notice that Cobb needed to take steps to get within schedule. When things failed to improve, on November 18, 2016, Hunt served Cobb with a Notice of Default of Subcontract Obligations and Notice of Termination ("Termination Notice"). By the Termination Notice Hunt informed Cobb that Hunt was terminating the portion of Cobb's work related to the podium. The Termination Notice directed Cobb to stop working on the podium within three days but to continue working on the tower. Hunt replaced Cobb with another subcontractor to correct Cobb's defective work and perform the remainder of the mechanical work on the podium.

---

[1] Liberty Mutual issued Subcontract Performance Bond No. 906001924 to Cobb for Hunt's benefit ("Performance Bond"). The Performance Bond identifies the Subcontract and states that the Subcontract "is by reference made a part hereof."

On December 7, 2016, Cobb served Hunt with a Notice of Claim, seeking in excess of $8,000,000 from Hunt, alleging that Hunt wrongfully terminated Cobb's work on the podium. On December 30, Hunt denied Cobb's claim.

On January 10, 2017, Cobb filed with the American Arbitration Association ("AAA") a Demand for Arbitration seeking arbitration of its dispute with Hunt and $8,000,000 from Hunt.[2] On January 16, 2017, Hunt demanded that Cobb withdraw its arbitration demand, but Cobb declined. Proceedings in arbitration were stayed by agreement of the parties through February 28, 2017. Hunt sent AAA a letter on February 28, 2017, citing Subcontract Section 43.3, which provides Hunt the right to determine whether any dispute between the parties will proceed in arbitration or litigation.

The February 28 letter informed AAA that Hunt was choosing to litigate the dispute. On March 1, 2017, Cobb sent an email to AAA contending that Section 43.3 was inoperable, because it conflicted with a provision in the Prime Contract. AAA responded that it would proceed with the appointment of an arbitration panel and, on March 7, submitted a list of prospective arbitration-panel members to the parties and required the parties to select among them by March 21, 2017.

On March 7, 2017, Hunt filed this action against Cobb and Liberty Mutual, seeking not less than $27 million in damages resulting from Cobb's delays and defective work. Cobb has answered and counterclaimed for breach of contract subject to Cobb's demand for arbitration.[3] Liberty Mutual also answered, filed a breach-of-contract counterclaim against Hunt, and seeks a declaration from

---

[2] The related arbitration proceeding before the AAA is No. 02 17 0000 2360.

[3] Cobb contends that the parties must arbitrate these disputes and its counterclaim is not intended as a waiver of Cobb's contention that arbitration is appropriate.

3

the court that the Performance Bond is null and void or that Liberty Mutual's obligations under the

Bond are discharged to the extent of the breaches by Hunt and the resulting damages.

**Notice of recent actions by AAA**

Hunt's April 3, 2017 Notice of AAA Action informs the court that on March 30, 2017, Rod

Toben, AAA Vice President, emailed counsel for Hunt and for Cobb the following:

> After a review of the parties' contentions, . . . the [AAA
> Administrative Review] Council has made the administrative
> determination that the AAA will not continue administration of this
> matter. Absent a court order compelling the arbitration of this case
> before the AAA, we are suspending our administration at this time.
> We will place the case in abeyance pending the district court's ruling
> on [Hunt]'s motion to stay the arbitration and will follow the
> direction of the court with regard to this arbitration.

> I request counsel update AAA upon the ruling of the court on the
> Motion to Stay.

Hunt asserts that the AAA's recent action moots Hunt's pending motion to stay and dismiss the

arbitration. Cobb disagrees and argues the AAA has neither stayed nor dismissed the pending

arbitration proceeding. Rather, the AAA has "decided to 'place the case in abeyance pending the

district court's ruling.'"

A matter is only moot "when the issues presented are no longer 'live' or the parties lack a

legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)

(quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

As Toben's email provides, the AAA placed the matter in abeyance, which may in essence

stay the arbitration proceeding. Further, the email provides that the AAA "will follow the direction

4

of the court with regard to this arbitration." Having considered the case file and particularly Toben's

representations in the March 30 email, the court concludes that Hunt's motion is not moot.[4]

**Hunt's allegations and Cobb's responses**

By its motion, Hunt contends that under the Subcontract, Cobb was without authority to

commence the arbitration proceedings absent Hunt's agreement.  Hunt argues that before Cobb files

any arbitration request or lawsuit, the Subcontract requires Cobb to ask Hunt's preference for

arbitration or litigation.  Cobb failed to do so before filing its request for arbitration.  Hunt contends

that Subcontract Section 34.3 allows only Hunt to decide whether any dispute between Cobb and

Hunt will proceed by arbitration or litigation.  Subcontract Section 34.3, titled "Hunt's Right to

Select Forum," provides:

> The parties recognize that construction disputes often involve or
> potentially involve third parties such as the Owner, Designer, other
> Project subcontractors or sub-subcontractors, or third parties claiming
> damages as a result of the Project's construction operations, and that
> it promotes judicial/arbitrary economy and consistency of results to
> resolve such disputes in a single forum.  In some of these cases, the
> underlying contracts may require litigation or arbitration of disputes,
> and for this reason and others, as between Hunt and [Cobb], Hunt
> must have the sole and exclusive right to determine whether any
> dispute, controversy or claim arising out of or relating to this
> Subcontract, or breach thereof, shall be submitted to a court of law or
> arbitrated under the auspices of the American Arbitration Association
> in accordance with its Construction Industry Arbitration Rules.  The
> venue of such court action or arbitration proceeding shall be in the
> jurisdiction in which the Project is located, or in Marion County,
> Indiana, as Hunt, to the extent permitted by applicable law, may (in
> its sole discretion) elect to the exclusion of all other jurisdictions.
> *[Cobb] must make a written request to Hunt to determine whether the
> dispute shall be submitted to a court or to arbitration.*  Hunt shall
> respond to [Cobb]'s request within ten (10) business days after receipt

---

[4] The court observes that although Hunt may believe that the AAA's recent actions moot the
pending motion to stay and dismiss the arbitration proceedings, Hunt has not withdrawn the motion.

5

thereof. *Hunt's response shall identify whether the matter will be submitted to a court or to arbitration and [Cobb] shall submit itself to the personal jurisdiction and venue of the court or arbitration proceeding selected by Hunt, to the exclusion of all other forums and jurisdictions.* [Cobb] waives any and all rights to contest Hunt's selection of forum, including, but not limited to, any rights based upon forum non conveniens. (Emphasis added.)

Hunt prefers that the disputes in this action between Hunt and Cobb be litigated rather than arbitrated. Hunt requests that the court render an order that stays the arbitration proceeding and requires Cobb to dismiss the arbitration proceeding without prejudice to Cobb reasserting its claims in this action.

Cobb responds that Subcontract Section 34.3 must be read in conjunction with the separately negotiated provisions in the Prime Contract, and when the two contracts are read together, there is "a clear and unmistakable intent that all claims be arbitrated and that any issues of arbitrability be resolved by an arbitral panel duly appointed by the AAA."

Cobb argues that the court cannot determine the issue of arbitrability by considering only Subcontract Section 34.3. Rather, Cobb's position is that the court must consider Attachment IV to the Subcontract which provides: "In the event there is a conflict in terms between this Subcontract Agreement and [the Prime Contract], it is hereby agreed that the less stringent terms of the two documents shall take precedent." Based on this provision, Cobb contends Section 34.3 must be compared to the terms of the Prime Agreement. Then, if there is a conflict in the terms between the two contracts, the less stringent provision applies. Cobb's position is that there is a conflict between the contracts regarding dispute resolution and that arbitration is the less stringent provision.

In addition to Attachment IV, Cobb argues the court must also consider other provisions of the Prime Contract and Subcontract. Specifically, Cobb directs the court to "Section 15.4 Arbitration" of the Prime Contract:

> Any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

Finally, Cobb relies on the Subcontract's incorporation of the Prime Contract, as provided in Subcontract Section 2.1 "Enumeration of the Contract Documents" to support its contention that the disputes in this action are arbitrable:

> The plans specifications, general conditions, special conditions and addenda prepared by the Owner and/or Designer for the Project and the prime contract between the Owner and Hunt dates May 19, 2014 (the "Prime Contract"), together with all Change Orders and modifications thereto through the date of this Subcontract, are available for examination by the Subcontractor at all reasonable times at Hunt's office. All of the aforesaid documents, (and any amendments thereto), which are more specifically described and enumerated in Attachment III are hereinafter referred to collectively as the "Contract Documents."

**Law**

Arbitration is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582

(1960)). *Howsam* recognizes the "liberal federal policy favoring arbitration agreements," but makes clear there is an exception to the policy: "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" 537 U.S. at 83.

The law presumes that courts have plenary power to decide the gateway question of a dispute's arbitrability–whether the parties agreed to arbitrate the merits of their dispute. *Houston Refining, L.P. v. United Steel, Paper, & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 765 F.3d 396, 408 (5th Cir. 2014). When a party calls upon a court to decide a dispute's arbitrability, the court must determine whether the dispute falls within the ambit of the parties' agreement to arbitrate. *Id.* If the parties do not so agree, then the "party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of the dispute." *Id.*

However, even the gateway question of arbitrability can be given to an arbitrator, if the parties so choose. But, the party contending that an arbitrator has authority to decide arbitrability "bears the burden of demonstrating clearly and unmistakably that the parties agreed to have the arbitrator decide that threshold question." *Id.* (quoting *ConocoPhillips, Inc. v. Local 13-055 United Steelworkers Int'l Union*, 741 F.3d 627, 630 (5th Cir. 2014)). If the party cannot carry its burden, then the "court should decide [the arbitrability] question just as it would decide any other question that the parties do not submit to arbitration, namely, independently." *Id.* (quoting *First Options*, 514 U.S. at 943).

Subcontract Section 34.1 provides that the Subcontract shall be governed by and construed in accordance with Texas law, as Texas is the state in which the Fairmont is located.[5] Courts must "harmonize and give effect to all provisions of the contract so that none will be meaningless." *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 996 S.W.2d 647, 652 (Tex. 1999). "Specific and exact terms are given greater weight than general language." *Pratt-Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 829 (Tex. App.–Dallas 2003, pet. denied). "Generally, the parties to a contract intend every clause to have some effect and the Court will not strike down any portion of the contract unless there is an irreconcilable conflict." *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1984) (emphasis added).

**Analysis**

The court must first decide whether Cobb has shown that the parties have "clearly and unmistakably" agreed that an arbitrator should determine whether their dispute is arbitrable. *See Houston Refining*, 765 F.3d at 408.

Cobb argues that because the Subcontract and Prime Contract specifically call for the application of the AAA's Construction Industry Arbitration Rules, the parties have adopted the AAA rules and have undeniably agreed to have the arbitrator determine arbitrability. *See e.g., Cooper v. WestEnd Capital Mgmt., LLC*, 832 F.3d 534 (5th Cir. 2016).

---

[5] To determine state-law questions, federal courts look to final decisions of the highest court of the state. *See St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999). When there is no ruling by the state's highest court, it is the duty of the federal court to determine, as best it can, what the highest court of the state would decide. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). None of the parties dispute the application of Texas law.

In reviewing the several contracts, the court finds lacking support for Cobb's position that the parties agreed that an arbitrator would determine arbitrability. Upon reviewing the Prime Contract and the Subcontract the court finds no irreconcilable conflict between the contracts as to how Hunt and Cobb are to resolve their disputes in this action. The Subcontract is specific and explicitly provides the procedure for dispute resolution. Section 34.2, titled "Dispute Resolution," requires Cobb, in the event it has a dispute with Hunt, to contact Hunt and, upon Hunt's rejection of Cobb's position, then Section 34.2 provides that Cobb shall proceed as described in Section 34.3, which addresses Hunt's right to select arbitration or litigation. This Cobb did not do.

The court further finds that as between Hunt and Cobb, although the parties have agreed to apply the AAA's Construction Industry Arbitration Rules, they have only done so in the event Hunt determines to arbitrate a dispute. In this instance, Hunt has determined to litigate rather than arbitrate the disputes in this action.

The court concludes that Cobb has failed to carry its burden of showing that it and Hunt agreed that the issue of arbitrability would be determined by an arbitrator. As the question of arbitrability is properly before the court, the court also finds that there is no agreement by Hunt and Cobb to arbitrate their disputes in this action.

In appropriate circumstances the district court may stay an arbitration. *See Tai Ping Ins. Co. Ltd. v. M/V Warschau*, 731 F.2d 1141, 1144 (5th Cir. 1984). One such circumstance is to prevent the continued arbitration of a dispute that is not arbitable. *Id.* at 1147. As Hunt and Cobb never agreed to arbitrate their disputes, the court will stay the related proceeding currently in abeyance before the AAA.

In addition to a stay of the arbitration proceeding, Hunt requests that the court order Cobb to dismiss the arbitration proceeding.  In light of the actions taken by the AAA, as detailed in Toben's March 30 email and the court's finding that Hunt and Cobb have no agreement to arbitrate their disputes in this action, the court presumes that the parties will take all necessary steps to comply with this order.  The court declines at this time to render an order directing Cobb to take any particular action regarding the related proceeding before the AAA.

Having considered the motion, response, reply, the Notice of AAA Action, and the response to the notice, the case file, and the applicable law,

**IT IS ORDERED** that Hunt's Motion to Stay and Dismiss Arbitration Proceedings filed March 10, 2017 (Clerk's Document No. 7) is **GRANTED IN PART** and to the extent that the arbitration No. 02 17 0000 2360 pending before the American Arbitration Association is **STAYED,** pending further order of the court.  In all other respects the motion is **DENIED**.

Also before the court is Liberty's Case Management and Discovery Plan Pursuant to Rule 26(F) filed June 23, 2017 (Clerk's Document No. 36).  With the filing, Liberty includes a proposed scheduling order that, according to the certificate of conference, Cobb opposes.  Also before the court is Liberty's Advisory to the Court filed June 23, 2017 (Clerk's Document No. 37), which provides that the parties were unable to agree to orally confer about a proposed schedule for this action.  Having considered the entire case file,

**IT IS ORDERED** that the parties meet and confer and consult the website for the United States District Court for the Western District of Texas (www.txwd.uscourts.gov), the "Forms" tab, "Austin Division," and submit a joint proposed scheduling order utilizing this court's form **on or before Friday, July 28, 2017.**

SIGNED this **29th** day of June, 2017.


LEE YEAKEL
UNITED STATES DISTRICT JUDGE

12