# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| HUNT CONSTRUCTION GROUP, INC., <br>    an Indiana corporation, <br><br>        Plaintiff, <br><br>    v. <br><br> COBB MECHANICAL CONTRACTORS, INC., <br>    a Colorado corporation, <br><br> and <br><br> LIBERTY MUTUAL INSURANCE COMPANY, <br>    a Massachusetts corporation, <br><br>        Defendants. | Case No. 1:CV-17-215-LY |

## HUNT'S ANSWER TO LIBERTY'S AMENDED COUNTERCLAIM

Plaintiff Hunt Construction Group, Inc. ("Hunt") respectfully submits the following Answer to the Amended Counterclaim (ECF Dkt. No. 73) filed by Defendant Liberty Mutual Insurance Company ("the Surety"). Any allegations in the Amended Counterclaim not specifically admitted or addressed herein are denied.

## THE PARTIES

103.    **ALLEGATIONS:**    Liberty Mutual is incorporated under the laws of the State of Massachusetts and has its principal place of business in Boston, Massachusetts. Liberty Mutual is registered to do business in Texas and regularly does business in Texas.

**ANSWER:**    Admitted.

104.    **ALLEGATIONS:**    Hunt is incorporated under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

**ANSWER:**    Admitted.

1

## JURISDICTION AND VENUE

105. **ALLEGATIONS:** This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. 1332(a) and (c) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

**ANSWER:** Admitted.

106. **ALLEGATIONS:** Venue is proper in this District because the dispute arose in this District.

**ANSWER:** Admitted.

## FACTUAL BACKGROUND

107. **ALLEGATIONS:** On July 20, 2015, Hunt entered into a Subcontract with Cobb (the "Subcontract") for a lump sum of $30,938,190.00.

**ANSWER:** Admitted. Hunt refers to the Subcontract for its full meaning and effect.

108. **ALLEGATIONS:** On August 28, 2015, the Surety entered into a subcontract performance bond agreement ("the Bond"), naming Cobb Mechanical Contractors, Inc. ("Cobb") as principal, and Hunt as obligee.

**ANSWER:** Hunt admits that the Surety and Cobb Mechanical Contractors, Inc. ("Cobb") entered into a subcontract performance bond (the "Bond") naming Cobb as principal and Hunt as obligee, but Hunt denies that the Bond was entered into on August 28, 2015. The Bond states that it was "[s]igned and sealed this 26th day of August, 2015."

109. **ALLEGATIONS:** The Bond states in ¶ 2 that the "subcontract is by reference made a part hereof…"

**ANSWER:** Hunt denies that the language quoted in Paragraph 109 appears in ¶ 2 of the Bond. Rather, the quoted language appears in the preamble section of the Bond. Hunt refers to the Bind for its full meaning and effect.

110. **ALLEGATIONS:** The Subcontract provides for a "mutually agreed upon CPM schedule." (Subcontract, Attachment II, ¶ A(1)(q)).

**ANSWER:**   Hunt admits that the words quoted in Paragraph 110 appear in Attachment II, ¶ A(1)(q) of the Subcontract but denies the remaining allegations of Paragraph 110 and refers to the Subcontract for its full meaning and effect.

111.   **ALLEGATIONS:**   The Bond requires Hunt to perform its obligations under the Subcontract.

**ANSWER:**   Denied.

112.   **ALLEGATIONS:**   As a condition precedent, the Bond requires Cobb to actually be in default under the Subcontract; Hunt to declare Cobb in default under the Subcontract; and Hunt to perform its obligations thereunder.

**ANSWER:**   Hunt admits that the Bond provides those conditions precedent to certain obligations of the Surety.  Hunt refers to the Bond for its full meaning and effect and denies the remaining allegations in Paragraph 112.

113.   **ALLEGATIONS:**   If the conditions precedent mentioned above are met, the Bond requires Hunt to give the Surety an opportunity to remedy the default, subject to the provisions of paragraph 3 therein, which includes but is not limited to, making available for the Surety the "balance of the subcontract price" as defined in the Bond.

**ANSWER:**   Hunt denies that the Bond states that Hunt must "give the Surety an opportunity to remedy the default" and that the Bond states that Hunt must "mak[e] available for the Surety the 'balance of the subcontract price' as defined in the Bond."  Hunt refers to the Bond for its full meaning and effect and denies the remaining allegations in Paragraph 113.

114.   **ALLEGATIONS:**   Hunt declared a "partial termination" of Cobb.

**ANSWER:**   Hunt admits that it declared a partial termination of Cobb's Subcontract.

115.   **ALLEGATIONS:**   Hunt did not provide proper notice of default and opportunity to cure to Cobb.

**ANSWER:**   Denied.

116.   **ALLEGATIONS:**   The Bond does not cover, in any way, the Professional Services Agreement between Hunt and Cobb.

**ANSWER:**   Denied.

117.   **ALLEGATIONS:**   The Bond does not cover fraud.

**ANSWER:**   Hunt admits that Count VII of Hunt's Amended Complaint does not seek relief from the Surety under the Bond. Hunt denies the remaining allegations in Paragraph 117.

118.   **ALLEGATIONS:**   The Bond does not cover punitive damages.

**ANSWER:**   Denied.

119.   **ALLEGATIONS:**   The Bond does not cover out-of-pocket expenses of Hunt or the other claims of Hunt.

**ANSWER:**   Denied.

120.   **ALLEGATIONS:**   If Hunt's allegations of rescission or fraud in the inducement are proven valid, then the Bond is no longer effective.

**ANSWER:**   Denied. Hunt further states that it hereby withdraws its claim for rescission of the Subcontract.

121.   **ALLEGATIONS:**   Hunt did not make available the "balance of the subcontract price" to the Surety, and did not give the Surety an opportunity to remedy the default.

**ANSWER:**   Denied.

122.   **ALLEGATIONS:**   Instead, Hunt engaged another contractor, Brandt, on a time and material basis, to perform work on the podium.

**ANSWER:**   Hunt admits that, after the partial termination, it entered into a subcontract with Brandt to perform work on the podium on a time and material basis. Hunt denies the remaining allegations in Paragraph 122.

123.   **ALLEGATIONS:**   Hunt did not give the Surety "reasonable notice," as required under the Bond, and did not first give the Surety a meaningful opportunity to perform or to mitigate damages.

**ANSWER:**   Denied.

124.   **ALLEGATIONS:**   At the time of notice of default, Cobb was not in material default of the subcontract.

**ANSWER:**   Denied.

125. **ALLEGATIONS:** All conditions precedent to the Surety's counterclaims have been performed or waived.

**ANSWER:** Denied.

## COUNT I – BREACH OF CONTRACT

126 – 135. Hunt has moved to dismiss this Count I of the Surety's Amended Counterclaim, and thus no answer is presently required.

## COUNT II – DECLARATORY JUDGMENT

136. **ALLEGATIONS:** The Surety incorporates by reference paragraphs 103-135 above in this Count II as though fully restated herein.

**ANSWER:** Hunt hereby incorporates its answers to paragraphs 103-135 of the Surety's Amended Counterclaim as though fully restated herein.

137. **ALLEGATIONS:** This is an action for declaratory judgment and supplemental relief under 28 U.S.C. §§ 2201 and 2202.

**ANSWER:** Hunt admits that the Surety purports to assert a claim for declaratory judgment and supplemental relief under 28 U.S.C. §§ 2201 and 2202 but denies that the claim has merit.

138. **ALLEGATIONS:** In order to resolve this controversy, the Surety requests that, pursuant to 28 U.S.C. § 2201 and 2202, this court declare the respective rights and duties of the parties in this matter, including, in particular, that the court declare that:

    a. The Bond is null & void, and the Surety is discharged of any duty on the Bond, because of the material breaches by Hunt;

    b. Alternatively, the Surety's obligations under the Bond are discharged to the extent of the breaches by Hunt and the resulting damages;

    c. Hunt failed to give adequate notice and an adequate opportunity to cure the alleged issues;

    d. Hunt's improper unilateral completion with Brandt does not constitute "reasonable costs," as required by the terms of the performance bond.

    e. The Surety is exonerated from any obligations under the Bond because of Hunt's material alterations of the bonded contract;

    f. The Bond does not cover, in any way, the Professional Services Agreement between Cobb and Hunt.

    g. The Bond does not cover fraud;

      h.      The Bond does not cover the punitive damages sought by Hunt;

      i.      The Bond does not cover the out-of-pocket and other damages sought by Hunt;

      j.      If the Subcontract is rescinded, the Bond is no longer effective.

**ANSWER:** Hunt denies that the Surety has a proper basis to seek relief pursuant to 28 U.S.C. §§ 2201 and 2202 and denies the remaining allegations in Paragraph 138.

## COUNT III – ATTORNEY'S FEES AND COSTS

139. **ALLEGATIONS:** Pursuant to Texas Civil Practices & Remedies Code 38.001, *et. seq.*, applicable statues, common law, and the contracts, the Surety is entitled to recover its attorney's fees and costs.

**ANSWER:** Denied.

## AFFIRMATIVE DEFENSES

1. The Surety is estopped from asserting that proper notice was not given and that it was not given an opportunity to mitigate its damages.

2. The Surety is estopped from denying that there was a valid schedule to which Cobb was bound.

3. If and to the extent that the Surety had any right to determine the course of remediation as a condition precedent to its obligation to pay Hunt under the Bond, the Surety waived that right.

4. The Surety's claims fail under the doctrines of unclean hands and *in pari delicto*.

5. The Surety's claims fail because it encouraged and abetted Cobb's breaches.

6. Hunt's liability for breach of the Bond, if any, is excused by the Surety's prior breaches.

## ADDITIONAL DEFENSES

7. The Surety's Counts I, II, and III fail to state claims upon which relief can be granted.

## PRAYER FOR RELIEF

WHEREFORE, Hunt requests that the Surety's Amended Counterclaim be dismissed in its entirety, that the Surety take nothing thereunder, that the Court award Hunt its reasonable attorneys' fees and costs pursuant to applicable Texas law, and that the Court award such other and further relief as the Court deems equitable and just.

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Casey Low*
    Casey Low
    401 Congress Avenue
    Suite 1700
    Austin, Texas 78701
    (512) 580-9616
    Casey.Low@pillsburylaw.com

    Steven G.M. Stein (*admitted pro hac vice*)
    C. Steven Tomashefsky (*admitted pro hac vice*)
    Andrew J. Donivan (*admitted pro hac vice*)
    STEIN RAY LLP
    222 West Adams St.
    Suite 1800
    Chicago, Illinois 60606
    (312) 641-3700
    sstein@steinraylaw.com
    stomashefsky@steinraylaw.com
    adonivan@steinraylaw.com

    **ATTORNEYS FOR PLAINTIFF**
    **HUNT CONSTRUCTION GROUP, INC.**

Dated: March 5, 2018

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 5, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                              */s/ Casey Low*
                                              Casey Low