IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HUNT CONSTRUCTION GROUP, INC., <br>    an Indiana corporation, <br><br>       Plaintiff, <br><br>    v. <br><br> COBB MECHANICAL CONTRACTORS, INC., <br>    a Colorado corporation, <br><br> and <br><br> LIBERTY MUTUAL INSURANCE COMPANY, <br>    a Massachusetts corporation, <br><br>       Defendants. | ) <br> ) <br> ) <br> )    Case No. 1:CV-17-215-LY <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**HUNT'S MEMORANDUM IN OPPOSITION
TO LIBERTY'S MOTION TO DISMISS COUNT VII**

Plaintiff Hunt Construction Group, Inc. ("Hunt") respectfully submits this memorandum in opposition to the Motion to Dismiss Count VII of Hunt's Amended Complaint or Alternatively For More Definitive Statement (ECF Dkt. No. 72) filed by Defendant Liberty Mutual Insurance Company ("Liberty").

Count VII of Hunt's Amended Complaint asserts a fraudulent-inducement claim against Defendant Cobb Mechanical Contractors, Inc. ("Cobb") based on specific misrepresentations by Cobb to induce Hunt's execution of a subcontract agreement. Count VII is not directed at Liberty, and Hunt seeks no relief against Liberty in Count VII. Liberty nonetheless seeks its dismissal on the purported basis that it fails to state a claim upon which relief can be granted.

1

The motion should be denied. Liberty has no standing to seek dismissal of a count in which it is not named, but even if it did, Count VII states a claim for relief under applicable Texas law and provides the particularity required by Fed. R. Civ. P. 9(b).

## FACTS

**The Parties and the Project**

1.  Hunt is the general contractor for the construction of the new Fairmont Hotel in Austin, Texas (the "Project"). The Project consists of a "Podium" section, which includes seven above-ground stories of ballrooms, meeting rooms, restaurants, and other amenities as well as four underground levels, and a 31-story "Tower" section consisting primarily of guestrooms. When completed, the Project will be Austin's largest hotel.  (AC ¶ 7.)[1]

2.  Cobb is a subcontractor retained by Hunt to design, construct, and install the Project's heating-ventilating-air conditioning ("HVAC") and plumbing systems pursuant to two contracts: a Professional Services Agreement dated October 3, 2014 for Cobb to design of the mechanical and plumbing systems (the "PSA"), and a Subcontract Agreement dated July 20, 2015 for Cobb to supply and install those systems (the "Subcontract"). (AC ¶¶ 10-11.)

3.  The Subcontract required Cobb to obtain a performance bond to guarantee performance of Cobb's obligations under the Subcontract and to cover Hunt's costs should Cobb fail to meet its obligations. On August 26, 2016, Liberty issued Subcontract Performance Bond No. 906001924 (the "Bond") pursuant to that requirement. (AC ¶ 12.)

---

[1] "AC" references are to Hunt's Amended Complaint, ECF Dkt. No. 66, February 2, 2018

**Cobb's Representations to Hunt**

4. Given the Project's size and complexity, and given Austin's high level of construction activity, Hunt was concerned that Cobb provide assurances that it had the resources – particularly the human resources – to perform its scope of work. To induce Hunt to execute the Subcontract, Cobb made the following representations:

> Subcontractor represents that it has . . . investigated and satisfied itself with respect to: . . . (7) the availability and adequacy of personnel and workers and the prevailing wage scales . . . . (Subcontract § 3.5(c)(7).)

> **Subcontractor's Representations as to Competency and Experience:** Subcontractor hereby represents and warrants that Subcontractor is experienced in performing the type, quality and quantity of work required for performance of this Subcontract, is financially solvent with sufficient capital and other resources, and has sufficient management, supervision and labor capacity to properly perform this Subcontract. (Subcontract § 3.9, emphasis in original.)

(AC ¶ 13.)

**Cobb's Defaults and Partial Termination of the Subcontract**

5. Cobb's work under the Subcontract did not go well. By late June, 2016, it became apparent to Hunt that Cobb was falling behind schedule. One significant reason for that was Cobb's failure to provide sufficient manpower and supervision to complete its earliest tasks, including installation of plumbing risers and HVAC risers in the Tower and rough-in work on bathrooms in the Podium. Thus, by late June 2016, the Project was nearly at a standstill, and was falling behind schedule. (AC ¶¶ 25-27.)

6. Alarmed that Cobb was falling behind so quickly, Hunt called a meeting with Cobb to express its concern. On June 27, 2016, Cobb sent Hunt a partial make-up schedule showing

how many crew members Cobb intended to supply. That schedule did not provide sufficient manpower to recover from Cobb's delays. (AC ¶¶ 29-30.)

7.  As a result, Cobb did not in fact recover the lost time. Therefore, on July 13 and 25, 2016, Hunt sent Cobb notices of default specifying, among other things, Cobb's failure to provide sufficient manpower to meet the Project schedule. Additional meetings and discussions, in which representatives of Liberty were included, took place over the next several months. But Cobb never recovered from its delays and failed to provide adequate manpower with which to do so. (AC ¶¶ 32-42.)

8.  At a meeting on November 17, 2016, Hunt asked representatives of Liberty whether they believed Cobb could finish its work in time to permit substantial completion of the Project as scheduled. Liberty's representative stated that they did not believe Cobb could do so. (AC ¶ 44.)

9.  On November 18, 2016, based on Cobb's continuing failure to supply sufficient manpower and supervision and on its delays, Hunt issued a partial termination of Cobb's Subcontract, eliminating Cobb's scope of work on the Podium and limiting Cobb's remaining work to the Tower. (AC ¶¶ 45-46.)

10. Hunt retained a replacement subcontractor, The Brandt Companies, LLC ("Brandt"), to take over Cobb's terminated scope on the Podium. (AC ¶ 48.)

11. Shortly thereafter, Liberty informed Hunt in a letter dated January 31, 2017 that Liberty was denying Hunt's claims made on the Bond and any future claim Hunt might make on the Bond, taking the position that the Bond was "released." (AC ¶ 56.)[2]

---

[2] Liberty would ultimately take the position in this litigation that in addition to being "released," the Bond was also "null & void, and the Surety is discharged of any duty on the Bond." (Liberty's Amended Answer & Counterclaim, ECF Dkt. No. 73, ¶ 138.)

**The Scheduling Order**

12. Hunt filed this lawsuit on March 3, 2017 after Cobb had improperly served a demand for arbitration. (AC ¶¶ 49-53.) On June 29, 2017, this Court issued an Order staying the arbitration proceeding and directing the parties to confer and submit a joint proposed scheduling order by July 28, 2017. (ECF Dkt. No. 40.)[3]

13. On July 28, 2017, Hunt, Cobb, and Liberty jointly filed a proposed scheduling order pursuant to Fed. R. Civ. P. 16 stipulating to January 31, 2018 as the deadline to file all amended or supplemental pleadings. (ECF Dkt. No. 43, ¶ 1.) On October 18, 2017, the Court entered the Scheduling Order adopting the parties' proposal, including their agreement to a January 31, 2018 deadline to amend pleadings. (ECF Dkt. No. 58, ¶ 1.)

14. On January 31, 2018, Hunt filed its Amended Complaint asserting additional counts against Cobb for breach of the PSA, breach of fiduciary duty in relation to the PSA, and fraudulent inducement of the Subcontract. (ECF Dkt. No. 61.) Hunt's Amended Complaint did not amend its claims directed at Liberty. Also on January 31, 2018, Cobb filed an amended Counterclaim. (ECF Dkt. No. 60.)[4]

**Hunt's Fraud Claim against Cobb**

15. Count VII of Hunt's Amended Complaint (AC ¶¶ 93-98) alleges two specific misrepresentations by Cobb: (a) its representation that it had investigated and satisfied itself with respect to the availability and adequacy of personnel and workers and the prevailing wage scales; and (b) its representation that it had sufficient management, supervision, and labor capacity to

---

[3] On July 13, 2017, the American Arbitration Association issued a notice closing the arbitration proceeding.

[4] Hunt's January 31, 2018 filing was a motion for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2), which was unopposed. The Court granted the motion on February 2, 2018. (ECF Dkt. No. 65.) Cobb did not file a motion for leave to amend, taking the position that the Scheduling Order itself provided leave in advance.

properly perform the Subcontract. (AC ¶¶ 94-95.) Count VII further alleges that those statements were false, that Cobb knew they were false at the time they were made, that Cobb nonetheless made them to induce Hunt to execute the Subtract, and that Hunt was induced to enter into the Subcontract by those misrepresentations. (AC ¶¶ 96-97.)

## ARGUMENT

16.  Liberty's motion should be denied for five reasons: (1) Liberty lacks standing to seek dismissal of a count not directed against it; (2) Count VII meets federal pleading requirements for fraud and the elements of fraud under Texas law; (3) Count VII is not duplicative of Hunt's breach-of-contract claim, and even if it were, the Federal Rules permit alternative and inconsistent pleadings; (4) the economic loss rule does not apply to fraud claims; and (5) Cobb's partial performance does not negate Hunt's fraud claim.

### I.   LIBERTY LACKS STANDING TO SEEK DISMISSAL OF COUNT VII.

17.  As an initial overarching matter, Liberty's motion should be denied because Liberty lacks standing to assert it. Count VII is directed only at Cobb, and Cobb has already answered it. (ECF Dkt. No. 68, ¶¶ 93-98.) Count VII is not directed at Liberty, as Liberty itself has acknowledged: in its Answer to Hunt's Amended Complaint, it responds that the allegations in Hunt's fraud claim do not require an answer from Liberty "as they are directed only at Cobb." (ECF Dkt. No. 73, ¶¶ 93-98.) Hunt agrees with Liberty on that score. And if Liberty is not required to answer Count VII, by definition it cannot seek the Count's dismissal.

18.  Justiciability over a claim requires a "live controversy" between "at least two active combatants." *Goldin v. Bartholow*, 166 F.3d 710, 719 (5th Cir. 1999). Thus, a defendant must "present the court with a justiciable controversy." *Id*. at 720. Here, although Count VII presents

a live controversy between Hunt and Cobb, it alleges no live controversy between Hunt and Liberty.  Hunt seeks no judgment against Liberty.  Nor has Liberty asserted that, should Hunt prevail in establishing a fraud claim against Cobb, that would increase Liberty's exposure under the Bond.

19. Implicitly admitting its lack of interest in Count VII on the merits, Liberty attempts to establish an interest in Count VII based on the effect it argues Count VII would have on the progress and management of this litigation as a whole.  Liberty's motion complains that Hunt's fraud count was filed just "[f]our months before discovery closes," and "nearly one year after the lawsuit was filed." (Motion at ¶¶ 1, 3.)  Liberty further assets that the fraud claim will dramatically impact the case's "just, speedy, and inexpensive determination" and claims that "[d]ismissal of Hunt's fraud claim is therefore critical to keeping this case what it is." (Motion at ¶¶ 4-5.)

20. Those "concerns" are baseless and in any event cannot provide Liberty with standing to seek Count VII's dismissal.

21. First, Liberty's remarks about the timing of Hunt's fraud claim ignore the fact that Liberty itself agreed to set January 31, 2018 as the deadline to amend pleadings in the parties' joint proposed scheduling order.  Liberty cannot complain that Hunt's compliance with the agreed Order creates prejudice to the case schedule.

22. Moreover, considering the current posture of discovery, Liberty's ominous warnings that Hunt's fraud claim will harm the progress and management of this case cannot be taken seriously.  The discovery that has occurred to date will in no way be undermined by the addition of Hunt's fraud claim.  The parties have yet to take any depositions, nor have any deposition notices even been served.  None of the parties has completed its production of documents.

23. Indeed, Liberty yet to issue a single discovery *request*, and it produced its first document in this case only three days before filing its motion. Liberty has made no progress in discovery that is at risk of being undone.

24. Hunt filed its fraud claim 14 months before the commencement of trial. Count VII will not place that date at risk. Moreover, Liberty utterly fails to provide any authority for its argument that filing an amended complaint within the agreed time to do so can possibly form the basis for a motion to dismiss.

## II. HUNT'S FRAUD CLAIM MEETS FEDERAL PLEADING REQUIREMENTS AND THE ELEMENTS OF FRAUD IN TEXAS.

25. Liberty contends that Count VII fails to state a claim pursuant to the pleading requirements of Fed. R. Civ. P. 9(b) and the elements of fraud under Texas law. That argument is meritless.

26. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Rodriguez v. Children's Alliance of South Texas*, No. SA-17-CV-599-XR, 2018 WL 523213, at *2 (W.D. Tex. Jan. 23, 2018), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

27. Rule 9(b) requires a fraud claim to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Lightsource Analytics, LLC v. Great Stuff, Inc.,* No. A–13–CV–931 LY, 2014 WL 798069, at *1 (W.D. Tex., Feb 27, 2014). Hunt's fraud claim does just that.

28. First, the fraud count specifies "the statements contended to be fraudulent" as Cobb's representations in Subcontract Sections 3.5 and 3.9 that it had investigated and satisfied

8

itself with respect to the availability and adequacy of personnel and workers and the prevailing wage scales and that it had sufficient management, supervision, and labor capacity to properly perform the Work.  (AC ¶¶ 94-95.)

29.    Hunt's fraud count "identif[ies] the speaker" of the representation as Cobb the corporate entity, which executed the Subcontract.  Further, Hunt's fraud count "state[s] when and where the statements were made" by making clear that Cobb's statements were made in the Subcontract, which is dated July 20, 2015.  (AC ¶ 11.)

30.    Finally, Hunt's fraud count "explain[s] why the statements were fraudulent" – because Cobb had in fact not investigated and satisfied itself with respect to the availability and adequacy of personnel and workers at the prevailing wage scales, nor did Cobb possess sufficient management and labor capacity to properly perform the Subcontract.  (AC ¶ 96-97.)

31.    The elements of fraud under Texas law require: "(1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."  *Italian Cowboy Partners v. Prudential Ins. Co.*, 341 S.W.3d 323, 337 (Tex. 2011).

32.    Liberty's motion does not articulate which of these elements of fraud is missing from Hunt's claim.  In any event, the fraud claim satisfies them all.

33.    First, as just discussed in the context of Rule 9(b), Hunt's claim alleges Cobb made a material and false presentation in Subcontract Section 3.5 and 3.9, satisfying the first two elements.

34. Hunt's claim further alleges that Cobb knew its statements were false when it made them, satisfying the third element. (AC ¶ 96-97.)

35. Hunt's claim also alleges that Cobb made its representations to induce Hunt into acting on them by executing the Subcontract, which Hunt ultimately did in reliance on those statements, satisfying the fourth and fifth elements. (*Id*.)

36. Finally, Hunt has alleged substantial damages as a result of its execution of the Subcontract in reliance on Cobb's fraudulent statements, satisfying the sixth element. (AC, prayer for relief (g).)

37. Thus, Hunt's claim is well pleaded and satisfies the elements of fraud. Liberty's argument to the contrary should be rejected.

### III. HUNT'S FRAUD CLAIM IS NOT DUPLICATIVE OF ITS BREACH OF CONTRACT CLAIM.

38. Liberty next argues that the fraud claim is duplicative of Hunt's breach of contract claim. But Liberty does not provide any authority showing that duplicative breach of contract and fraud counts are a basis for dismissal. Indeed, the Federal Rules expressly permit alternative and inconsistent pleadings. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively . . . ."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")

39. Moreover, there is no doctrine of law providing that a fraud claim must be dismissed if it "duplicates" a breach-of-contract claim. The cases on which Liberty relies are inapposite. In *Gay v. City of Wichita Falls*, 457 S.W.3d 499 (Tex. App. – El Paso, 2014), the plaintiff's fraud claim was based on "breach of a future promise rather than misrepresentation or nondisclosure of an existing fact." *Id*. at 509. Here, to the contrary, Hunt's claim is that Cobb's

representations were false when made. In addition, the court did not dismiss the fraud claim based on the notion that it was "duplicative." Rather, the court rejected the plaintiff's attempt to avoid the defendant's sovereign immunity by styling its claim as one for fraud. *Id*. That issue is entirely inapplicable here. Similarly, the other case Liberty cites, *Mosaic Caribe, Ltd. v. AllSettled Group, Inc.*, 117 A.D. 421 (N.Y. App. Div. 2014) – a case decided under New York law – did not order dismissal of a fraud claim based on duplication of a breach-of-contract claim. Rather, it found the fraud claim failed to allege key elements of fraud and must be dismissed. It then pointed out – apparently as a consolation to the plaintiff – that the fraud claim added nothing new to the case in any event. *Id* at 422-23.

40. Finally, even if Liberty's argument had a legal basis, it is based on Liberty's incorrect reading of what Count VII actually alleges.

41. Count VII does not claim that Cobb made promises of future performance without intending to perform them. Rather, Hunt's claim focuses on affirmative statements by Cobb regarding the investigation it claimed it had *already performed* and regarding its then-existing capacity to perform the Subcontract work with sufficient management, supervisory, and labor capacity needed for the job.

42. Those allegations do not duplicate Hunt's breach-of-contract claim, which covers a broad scope of breaches of the Subcontract by Cobb over the entire Project term. To be sure, one of Cobb's breaches was its failure in fact to provide adequate manpower and supervision. But the fraud was that Cobb induced Hunt into executing the Subcontract by misrepresenting its capacity to perform before the work had even begun. Had Cobb correctly represented the facts, Hunt would have contracted with someone else, and Cobb would not have had the opportunity to commit its subsequent breaches.

### IV. WELL SETTLED TEXAS LAW HOLDS THAT THE ECONOMIC LOSS RULE IS INAPPLICABLE TO FRAUD CLAIMS.

43. Liberty next argues that the economic loss doctrine bars claims for fraud, citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986) and *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991). That argument necessarily fails because the Texas Supreme Court held long ago that *Reed*, *DeLanney*, and the economic loss doctrine do not apply to claims of fraudulent inducement of a contract. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46-47 (1998).

44. As noted in Liberty's motion, *Reed* and *DeLanney* hold that when a defendant's conduct breaches a contract and the harm to the plaintiff is limited to the subject matter of the contract, the plaintiff's only action is to recover damages in contract rather than tort.

45. *Formosa Plastics* expressly rejected the notion that *Reed, Delaney,* and the economic loss rule applied to claims of fraudulent inducement. It held that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." 960 S.W.2d at 47. That is because "it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Id*. at 46.

46. Thus, properly construed, Count VII is not barred by the economic loss rule.

### V. COBB'S PARTIAL PERFORMANCE DOES NOT NEGATE HUNT'S FRAUD CLAIM.

47. Liberty's next argument is that Cobb's partial performance on the Project negates Hunt's fraud claim. Liberty argues that if "Hunt alleges that Cobb fraudulently induced Hunt to

enter the Subcontract. . . [t]his requires Hunt to prove that Cobb had no intention of performing the subcontract." (Motion, ¶ 13.)

48. Again, Liberty misstates what Count VII actually alleges. As already noted, the fraud that Hunt alleges is not that Cobb entered into the Subcontract without intending to perform it. Rather, Hunt alleges that Cobb induced Hunt to execute the Subcontract by misrepresenting its investigation into the availability of adequate workers and by misrepresenting its then-existing management, supervisory, and labor capacity.

49. The cases Liberty cites all concern fraud claims alleging the defendant entered into a contract with no intent to perform. For example, in *Reyna v. First Nat. Bank in Edinburg*, 55 S.W.3d 58 (Tex. App. – Corpus Christi-Edinbrug 2001), the plaintiff sold computer equipment to the defendant and alleged the defendant had promised full payment on delivery, but the defendant only tendered partial payment. The court affirmed summary judgment against the claim because the defendant's partial payment negated the plaintiff's claim that the defendant never intended to pay on delivery. 55 S.W.3d at 68.

50. Similarly, in *Brothers v. Print, Inc.*, No. 3:07-CV-0415-B, 2007 WL 3331974 (N.D. Tex. Nov. 8, 2007), the plaintiff alleged that his employer had promised to continue employing and paying him despite his indictment on criminal charges, which he relied on in electing to plead guilty, but the employer fired him anyway. The court dismissed the claim because the employer had in fact continued employing and paying the plaintiff for nearly three years after the promise, a partial performance negating the intent not to perform. 2007 WL 3331974 at *6.

51. Finally, Liberty cites *Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029 (5th Cir. 2010), in which the plaintiff alleged the defendant said it would pay the plaintiff if it executed the contracts but failed to do so. The court noted that the defendant

had in fact made a significant payments to the plaintiff, a partial performance that negated the inference of an intent not to pay.  607 F.3d at 1034-35.[5]

52. Liberty also argues that Cobb's partial performance bars the remedy of rescission.  To avoid further argument on that score, Hunt withdraws its claim for rescission and limits the relief it seeks under Count VII to damages and punitive damages.

53. Here, because Hunt does not allege that Cobb entered into the contract with no intent to perform, but rather focuses on Cobb's affirmative representations about facts material to whether Cobb *even could* perform, partial performance is irrelevant and does not negate Hunt's fraud claim.  If anything, Cobb's failure to provide adequate manpower and supervision over the course of its work only strengthens the allegation that it misrepresented its ability to perform at the outset.

## **CONCLUSION**

Liberty has no business seeking dismissal of Count VII.  But even if it did, it has not met the burden of establishing that Hunt's fraud claim fails to state a claim for relief.  The fraud claim complies with federal pleading requirements and states the elements for fraudulent inducement under Texas law.

---

[5] The remaining cases Liberty cites for the proposition that partial performance negates a fraud claim are distinguishable for the same reason that those fraud claims were premised on the defendant's alleged lack of intent to perform.  In *Allamon v. Acuity Specialty Products, Inc.*, 877 F. Supp.2d 498 (E.D. Tex. 2012), the plaintiff's fraud claim was premised on the allegation that her employer entered into new employee guidelines with no intention of keeping them.  In granting summary judgment against the claim, the court noted that the employer had partially performed under the new guidelines, negating the alleged lack of intent.  In *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419 (Tex. App. 1998), the plaintiff alleged the defendants made representations with no intent to perform on a note, but the court noted that the defendants had partially met their obligations under the note.

14

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Casey Low*
    Casey Low
    401 Congress Avenue, Suite 1700
    Austin, Texas 78701
    (512) 580-9616
    casey.low@pillsburylaw.com

    Steven G.M. Stein (*admitted pro hac vice*)
    C. Steven Tomashefsky (*admitted pro hac vice*)
    Andrew J. Donivan (*admitted pro hac vice*)
    STEIN RAY LLP
    222 West Adams Street, Suite 1800
    Chicago, Illinois 60606
    (312) 641-3700
    sstein@steinraylaw.com
    stomashefsky@steinraylaw.com
    adonivan@steinraylaw.com

    **ATTORNEYS FOR PLAINTIFF**
    **HUNT CONSTRUCTION GROUP, INC.**

Dated: March 5, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Casey Low*
Casey Low
