IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUNT CONSTRUCTION GROUP, INC., an Indiana corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.  1:CV-17-215 |
| COBB MECHANICAL CONTRACTORS, INC., a Colorado corporation | § § § § | |
| Defendant | § § | |
| and | § § | |
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation | § § § § | |
| Defendant / Counter-Claimant | | |

## LIBERTY MUTUAL INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNT I OF LIBERTY'S COUNTERCLAIM

Defendant-Counterclaimant, Liberty Mutual Insurance Company (the "Surety" or "Liberty"), files its Response in Opposition to Plaintiff's ("Hunt") *Motion to Dismiss Count I of Liberty's Amended Counterclaim*, Dkt. 74, and respectfully states:

### Summary

1.      A bond is a contract, and, therefore, a bond is subject to the general law of contracts. Hunt asks the Court to ignore Texas Supreme Court and Fifth Circuit precedent, and to determine that Hunt could *never* breach the contract.

2.      Courts have long held that obligees, such as Hunt, materially breach the performance bond by doing precisely what Hunt did here: unilaterally hiring a completion

contractor. This breach and Hunt's other breaches are particularly egregious when looked at in the context of Hunt's eye-popping damage model: "at least $36 million." This runaway damage claim, rooted in Hunt's improper use of a "completion contractor" on an uncapped time-and-material basis, is precisely what courts strive to avoid in routinely holding that an obligee's unilateral hiring of a replacement contractor breaches the bond by depriving the surety of the completion options called for in the bond. This is just one example of Hunt's breaches.

3.      Contrary to Hunt's assertions, Liberty has sufficiently pleaded all of the elements of breach of contract. In short, and as set forth more fully below:

a)  **The bond is a contract.** Hunt breached the bond, which the Texas Supreme Court and the Fifth Circuit have long recognized is a contract;

b)  **Performance Excused or Prevented by Hunt.** Liberty was excused from performance by Hunt's failure to perform its conditions precedent; by Hunt's prevention of Liberty's ability to exercise its performance options; by Hunt's prior material breaches; and by Hunt's failure to establish a material default by Cobb prior to Hunt's (improper) "partial termination."

c)  **Hunt breached the terms of the bond.** Among other breaches, Hunt deprived Liberty of the opportunity to select its completion option; Hunt failed to tender the balance of the subcontract price to Liberty; and Hunt breached its obligation to achieve a mutually agreed upon project schedule — all of which Hunt expressly agreed to do.

d)  **Liberty sustained damages as a result of Hunt's breaches.** Liberty has alleged damages caused by Hunt's breaches. Moreover, "under Texas law, when one party's wrongful interference prevents the other party's performance of a contract, not only is the other party's performance excused, but the interfering party has committed a breach of contract for which the other party may recover damages sustained from the breach." *Pruitt v. Bank of New York Mellon*, 2017 WL 33383, *1 (N.D. Tex. 2017).

Hunt has therefore failed to meet its burden of proof for dismissal under rule 12(b)(6). Just as the Court denied Hunt's motion to dismiss Count II of Liberty's counterclaim, Dkt. 34, the Court should deny Hunt's motion to dismiss Count I.

### Arguments & Authorities

4.     As the movant, Hunt "carries the burden of proof for dismissal under rule 12(b)(6)." *McEnery v. City of San Antonio*, 2011 WL 13234879, *2 (W.D. Tex. 2011). This is a heavy burden. "Under the Fifth Circuit's strict standard of review, motions to dismiss for failure to state a claim are viewed with disfavor, and a court will only rarely encounter circumstances that justify granting such a motion." *Roehm v. Travis County*, 2013 WL 12077797, *1 (W.D. Tex. 2013) (citing, *inter alia*, *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

5.     "When considering a motion to dismiss for failure to state a claim, the court must accept all of plaintiff's allegations in the complaint as true . . . In addition, all reasonable inferences must also be drawn in the plaintiff's favor." *Kenneally v. Gulfside Supply, Inc.*, 2010 WL 322067, 1 (W.D. Tex. 2010) (Austin, M.J.) (internal citations omitted). "Therefore, a claim will not be dismissed on a Rule 12(b)(6) motion unless it appears to a certainty: (1) that no relief can be granted under any set of acts provable in support of its allegations, or (2) that the allegations, accepted as true, do not present a claim upon which relief legally can be obtained." *Roehm v. Travis County*, 2013 WL 12077797, *1 (W.D. Tex. 2013).

6.     Hunt has failed to meet its heavy burden in seeking to dismiss this breach of contract claim. "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App. - Houston [1st Dist.] 2010, no pet.). When one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party will

be deprived of the benefit that it could have reasonably anticipated from full performance. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994).

7.      Contrary to Hunt's assertions, the Surety has properly pleaded the elements of breach of contract. "To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach." *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App. - Houston [14th Dist.] 2008, no pet.).

8.      The Surety has pleaded: (1) the performance bond existed; (2) the Surety was excused from performance by Hunt's prior material breach, by Hunt's prevention, and by Hunt's failure to comply with the conditions precedent to triggering the Surety's performance; (3) Hunt breached the terms of the bond and the bonded contract, which is incorporated by reference into the bond; and (4) the Surety sustained damages as a result of Hunt's breaches.

**A.      The first element: a bond is a contract.**

9.      Hunt first argues that the Surety cannot bring a breach of contract action against Hunt. For this argument to have merit, Hunt must establish that the bond is not a contract, and that Hunt does not have affirmative obligations. This argument fails because the Surety has pleaded the existence of a contract (Dkt. 73, ¶¶ 108-109), and Hunt's obligations thereunder (id. at ¶¶ 110-113).

10.      The Texas Supreme Court has held that "a surety bond is subject to 'the common law of contracts…" *Great American Ins. Co. v. N. Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 420 (Tex. 1995) (quoting *State v. Alpha Oil & Gas, Inc.*, 747 S.W.2d 378, 379 (Tex. 1988)). The seminal case in the Fifth Circuit likewise recognizes: "A bond is a contract, and, therefore, a

bond is subject to the general law of contracts." *L&A Contracting Co. v. Southern Concrete Services, Inc.*, 17 F.3d 106, 109 (5th Cir. 1994). Courts across the country have agreed: a bond is a contract. *See e.g. Elm Haven Const. Ltd. P'ship v. Neri Const. LLC*, 376 F.3d 96, 100 (2d Cir. 2004) ("A bond is a contract, and we look to standard principles of contract interpretation to determine the rights and obligations of a surety under a bond."); *American Home Assur. Co. v. Larkin General Hosp., Ltd.*, 593 So.2d 195, 197 (Fla. 1992) ("A bond is a contract, and, therefore, a bond is subject to the general law of contracts."); *Whitehill v. Seaway Port Authority of Duluth, Minn.*, 349 N.W.2d 313, 315 (Minn. App. 1984) ("A bond is a contract, . . . which must be construed so as to carry out the intention of the parties.").

11.     Hunt cites an intermediate appellate case, *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54 (Tex. App. - Houston [1st Dist.] 2011, rule 53.7(f) motion granted), for its argument that the claims Liberty brings here are not grounds for an independent cause of action for damages against the obligee. *Gulf Liquids* does not stand for this proposition, and Hunt fails to cite any Texas Supreme Court authority in support of its argument. As Hunt recognizes in its opposition, *Gulf Liquids* is expressly limited to "owner nonpayment" and "material alteration." Dkt. 74, ¶ 22 (quoting *Gulf Liquids*, 356 S.W.3d at 83). The intermediate appellate court did not address the claims of Liberty, which, as set forth more fully below, courts have expressly determined may constitute a breach of contract by Hunt. *See e.g. Hunt Const. Group, Inc. v. National Wrecking Corp.*, 542 F.Supp.2d 87, 95 (D. D.C. 2008) ("When an obligee fails to provide timely notice to a surety so it can exercise its options under paragraph C, the obligee has breached the contract and the surety is without liability."); *Stonington Water Street Assoc, LLC v. Hodess Bldg. Co., Inc.*, 792 F.Supp.2d 253, 267 (D. Conn. 2011) (obligee's "unilateral decision to hire successor contractors to complete the project deprived [surety] of the opportunity to

mitigate its damages and represent material breaches of the bond."). The Surety has therefore sufficiently pleaded the first element: the existence of a contract.

> **B.** **The second element: the Surety was excused from performance by Hunt's prevention of the Surety's option to elect its remedy; Hunt's prior material breaches; and Hunt's failure to comply with conditions precedent.**

12.      Hunt next argues that the Surety "fails to allege facts supporting its performance under the contract." (Dkt. 74, ¶ 27). Hunt argues that this element means the Surety either had to (a) pay Hunt for costs incurred in Hunt's unilateral decision to retain Brandt in completing the scope of work of Cobb; or (b) arrange for completion of Cobb's terminate scope. *Id.* at ¶ 29. In so doing, Hunt omits the language from Texas law on this element being excused by the defendant's prevention of the other party's performance (which the Surety alleges here); presupposes it did not commit any prior material breaches (contrary to the Surety's allegations); and asks the Court to skip Hunt's conditions precedent to Liberty's performance obligations (which the Surety alleges Hunt failed to comply with). This argument therefore fails for three independent reasons:

> **a)** to trigger Liberty's performance obligations, Hunt needs to first prove a material breach by Cobb;
>
> **b)** Hunt committed a prior material breach, which excuses performance by Liberty; and
>
> **c)** Under Texas law, when one party prevents the other party's performance, as Hunt did here, the other party's performance is not only excused, but the interfering party has committed a breach of contract for which the other party may recover damages sustained from the breach.

13.      Hunt presents the Court with an abridged version of the second element, focusing only on "performance by the plaintiff." The full version is: "The second element of a breach of

contract claim requires Plaintiff to sufficiently plead that he tendered performance or that he was excused from doing so." *Schweiger v. USAA Federal Savings Bank*, 2017 WL 6503660, *4 (W.D. Tex. 2017) (Garcia, C.J.).

14.     Liberty sufficiently pleads that it was excused from performance. Dkt. 73, ¶ 131 ("Hunt did not provide a meaningful opportunity to Liberty to perform or to mitigate damages. Instead, Hunt unilaterally engaged another contractor, Brandt, apparently on a time and materials basis, to take over work on the podium . . ."); ¶ 132 ("Hunt did not make available the balance of the subcontract price to Liberty . . ."); ¶ 134 ("Hunt's improper unilateral completion with Brandt . . . constitutes a material breach of Hunt's obligations under the Bond.").

15.     "[U]nder Texas law, when one party's wrongful interference prevents the other party's performance of a contract, not only is the other party's performance excused, but the interfering party has committed a breach of contract for which the other party may recover damages sustained from the breach." *Pruitt v. Bank of New York Mellon*, 2017 WL 33383, *1 (N.D. Tex. 2017) (citing *Longview Const. & Dev., Inc. v. Loggins Const. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dism'd by agr.)). See also *O'Shea v. International Business Machines Corp.*, 578 S.W.2d 844, 846 (Tex. App. - Houston [1st Dist.] 1979, writ refused n.r.e. ("As a general rule, performance is excused when a party to a contract prevents the other party from performing.") (citing *Miller v. Hodges*, 260 S.W. 168, 172 (Tex.Comm. of App., 1924, jdgt. adopted)). Hunt's arguments that Liberty has failed to perform its obligations under the Bond are therefore an incorrect and incomplete reading of the second element, and are not grounds for dismissal. It was Hunt, after all, that blocked Liberty from being able to perform. And it is Hunt's obligation to first prove a material breach by Cobb, which it has wholly failed to do.

**C.     The third element: Hunt's breaches of the bond.**

16.     Hunt claims that the alleged breaches are not really breaches. Tellingly, Hunt does not cite any Texas cases — or any cases from other jurisdictions — holding that the Surety's allegations do not constitute a breach of the bond by the obligee. Perhaps that is because courts have routinely held that an obligee breaches the bond by doing precisely what the Surety alleges Hunt did here. As Judge Collier summarized: "Courts have consistently held that an obligee's action that deprives a surety of its ability to protect itself pursuant to performance options granted under a performance bond **constitutes a material breach**, which renders the bond null and void." *School Bd. of Escambia County, Fla. v. TIG Premier Ins. Co.*, 110 F.Supp.2d 1351, 1354 (N.D. Fla. 2000) (citing *L & A Contracting Co. v. Southern Concrete Serv., Inc.,* 17 F.3d 106, 111 (5th Cir.1994); *Balfour Beatty Constr. Inc. v. Colonial Ornamental Iron Works, Inc.,* 986 F.Supp. 82, 86 (D.Conn.1997); *Ins. Co. of N. Am. v. Metropolitan Dade County*, 705 So.2d 33, 34-35 (Fla. 3rd DCA 1997)).

17.     Hunt knows full well that its failure to afford the surety an opportunity to exercise its option under the performance bond is a material breach. That is what the court held in Hunt's case 10 years ago under the same Hunt-drafted subcontract performance bond that is at issue here. *Hunt Const. Group, Inc. v. National Wrecking Corp.*, 542 F.Supp.2d 87, 95 (D. D.C. 2008) ("When an obligee fails to provide timely notice to a surety so it can exercise its options under paragraph C, the obligee has breached the contract and the surety is without liability.").

18.     Indeed, a recent appellate court has expressly held that the surety may bring an affirmative breach of contract claim against the performance bond obligee. *T. Mina Supply, Inc. v. Clemente Bros. Contracting Corp.*, 139 A.D.3d 1040, 1041 (N.Y. App. 2016) (trial court erred by dismissing surety's breach of contract claim against the performance bond obligee); see also

American Bar Association, Fidelity & Surety Digest, 45 No. 1 Fidelity & Surety Dig. 1, 2 (2010) (obligee who, like Hunt, unilaterally hired a replacement contractor on a time and material basis "breached the bond by depriving the surety of the completion options called for in the bond . . . the procedures outlined in…the bond are designed to balance the rights of the obligee and the surety by allowing the obligee to terminate unsatisfactory contractors while protecting a surety's interests in choosing the most cost-efficient option for completion.") (citing *Derby Lofts, LLC v. J.J. Welch & Co., Inc.*, C.A. No. 2005-1776 (Mass., Essex County Sup. Ct. June 4, 2010)).

19.     In light of widespread recognition that Hunt's actions constitute breaches of the bond, Liberty has sufficiently pleaded the third element: Hunt's breaches. *See* Dkt. 73, ¶ 126-134.

**D.     The fourth and final element: damages as a result of Hunt's breaches.**

20.      Hunt's final effort to meet its burden of proof in seeking dismissal focuses on the fourth element of a breach of contract claim: damages caused by Hunt's breaches. Hunt claims that the Surety has not sufficiently alleged a claim for damages. The Surety, however, alleges that it "suffered and continues to suffer significant damages, including costs related to consulting fees and attorney's fees, which were a direct cause of Hunt's breaches of its obligations under the Bond. The Surety's damages are still accruing." Dkt. 73, ¶ 135. The Surety also alleges that Hunt's improper deprivation of the Surety's opportunity to perform, by way of Hunt unilaterally engaging a completion contractor, creates a multitude of problems and significantly escalates damages. *Id.* at ¶ 131.

21.     These allegations constitute a viable claim for damages. Hunt makes the unsupported argument that this element is defeated by the lack of an express contractual basis for Liberty's recovery of its damages. Hunt does not point to any cases or any express waivers by Liberty of the damages it seeks.

22.     Hunt does admit that there is "one possible scenario under which Hunt can owe Liberty money": Hunt's failure to provide the balance of the subcontract price to Liberty. Dkt. 74, ¶ 45. While Liberty disagrees there is only "one possible scenario," Liberty has alleged this scenario in its breach of contract claim: "Hunt did not make available the balance of the subcontract price to Liberty, which constitutes a material default of Hunt's obligations under the performance bond. The Surety has suffered and continues to suffer substantial damages as a direct result of this material breach of Hunt's obligations under the Bond." Dkt. 73, ¶ 132.

23.     Hunt perhaps makes this concession in light of the express provision in the bond, and case law across that country that the obligee's failure to agree to pay the Surety the balance of the contract price is a breach of the bond. *See e.g. Stonington* 792 F.Supp.2d 253, 267-69. Here, as in *Stonington*, by improperly depleting the contract balance, and by failing to agree to pay the contract balance to Liberty, Hunt has breached the bond. This entitles Liberty to damages.

24.     As mentioned above, under Texas law, a party's prevention of another party's ability to perform not only excuses the other party (the Surety) from performing, but also entitles the Surety to damages caused by Hunt's prevention. *Pruitt v. Bank of New York Mellon*, 2017 WL 33383, *1 (N.D. Tex. 2017) (citing *Longview Const. & Dev., Inc. v. Loggins Const. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dism'd by agr.)). The Surety has pleaded damages caused by Hunt's breaches, and damages caused by Hunt's prevention of the Surety's ability to perform. The Surety has therefore sufficiently pleaded all elements of breach of contract, and Hunt has failed to meet its heavy burden of proof for dismissal under rule 12(b)(6).

## **Request for Relief**

WHEREFORE, premises considered, the Surety respectfully requests that the Court deny Hunt's Motion to Dismiss, Dkt. 74.

Respectfully submitted,

**LANGLEY LLP**

By:＿＿ /s/ *Keith A. Langley* ＿＿＿＿＿＿＿＿＿＿
        Keith A. Langley – Attorney in Charge
        Texas State Bar No. 11919500
        1301 Solana Blvd., Bldg. 1, Suite 1545
        Westlake, Texas 76262
        214-722-7160 Telephone
        214-722-7161 Facsimile
        klangley@l-llp.com

        Trevor "Max" Langley
        Texas State Bar No. 24102060
        1301 Solana Blvd., Bldg. 1, Suite 1545
        Westlake, Texas 76262
        214-722-7185 Telephone
        214-722-7161 Facsimile
        mlangley@l-llp.com

        ***Counsel for Liberty Mutual***
        ***Insurance Company***

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing is to be delivered to the following parties in accordance with the Federal Rules of Civil Procedure on the 19th day of March, 2018.


        ＿/s/ Keith A. Langley＿＿＿＿＿＿
        Keith A. Langley


Casey Low
PILLSBURY WINTHROP SHAW
 PITTMAN LLP
401 Congress Avenue
Suite 1700
Austin, Texas 78701
Casey.Low@pillsburylaw.com

<u>**LIBERTY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNT I OF**
**LIBERTY'S AMENDED COUNTERCLAIM**</u>                                                                     **11**

Steven G.M. Stein
C. Steven Tomashefsky
STEIN RAY LLP
222 West Adams St.
Suite 1800
Chicago, Illinois 60606
sstein@steinraylaw.com
stomashefsky@steinraylaw.com


Michael L. Burnett
GREENBURG TRAURIG, LLC
1100 Louisiana Street, Suite 1799
Houston, TX 77002
burnetm@gtlaw.com