IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HUNT CONSTRUCTION GROUP, INC., <br> an Indiana corporation, <br><br> Plaintiff, <br><br> v. <br><br> COBB MECHANICAL CONTRACTORS, INC., <br> a Colorado corporation, <br><br> and <br><br> LIBERTY MUTUAL INSURANCE COMPANY, <br> a Massachusetts corporation, <br><br> Defendants. | Case No. 1:CV-17-215-LY |

**HUNT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
COUNT I OF LIBERTY'S AMENDED COUNTERCLAIM**

Plaintiff Hunt Construction Group, Inc. ("Hunt") respectfully submits this Reply in Support of its Motion to Dismiss Count I of the Amended Counterclaim filed by Defendant Liberty Mutual Insurance Company ("Liberty").[1]

1. Liberty has sued Hunt for damages based on an alleged breach of a Performance Bond. Hunt's motion to dismiss Liberty's claim is based on the basic premise that Texas law does not recognize an affirmative claim for damages by a performance bond surety against the bond's obligee. Rather, Liberty's claimed "breaches," if valid, could *at most* be potential defenses to its own liability on the Bond but cannot serve as grounds for an independent cause of action for breach of contract against Hunt.

---

[1] Hunt's Motion to Dismiss is ECF Dkt. No. 74; Liberty's Amended Counterclaim is ECF Dkt. No. 73.

1

2.      The validity of Hunt's position is established by the terms of the Bond itself and is further supported by uncontroverted Texas precedent directly addressing the question at bar. Liberty's response fails to offer any countervailing authority supporting its claim for affirmative monetary relief against Hunt.

I. **THE BOND'S EXPRESS TERMS PROHIBIT LIBERTY FROM SUING HUNT FOR AFFIRMATIVE RELIEF UNDER THE BOND.**

3.      The Bond is an instrument executed by Cobb Mechanical Contractors, Inc. ("Cobb"), as principal, and Liberty, as surety, for Hunt's benefit, as obligee, in the event that Cobb fails to perform its obligations under the Subcontract.[2] Hunt is not a signatory to the Bond; it is the beneficiary of Liberty's obligations. As such, Hunt assumed no affirmative duties to Liberty. Rather, Liberty's obligations to Hunt were conditioned on Hunt performing certain acts. If Hunt did not perform those acts, the Bond does not require Liberty to perform.

4.      Unable to produce any precedent for its cause of action, Liberty instead attempts to paint its claim as a classic breach of contract action, declaring that the Bond "is a contract," and that an obligee's actions can breach the Bond. Those arguments completely miss the point.

5.      The question is not whether the Bond is a contract; of course it is. But it is a particular *type* of contract: a promise by Liberty that it will provide certain benefits to Hunt if certain conditions occur. Hunt is the "obligee" – one to whom obligations are owed – not an "obligor" – one who owes obligations.[3]   Thus, the affirmative duties created by the Bond are not mutual. The Bond states on its face that Cobb (as principal) and Liberty (as surety) are "held and firmly bound unto Hunt":

---

[2] A true and correct copy of the Bond is attached as Exhibit 1 to Hunt's Motion to Dismiss (ECF Dkt. No. 74).

[3] See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) at 1556 (Obligee: "**1 a :** one to whom another is obligated : one toward whom another has undertaken an obligation : one in a position to enforce a legal duty owed by another – opposed to *obligor*  **b :** a person whose interests are protected under a surety bond").

2

> Cobb Mechanical Contractors, Inc., as Principal, hereinafter called Principal, and Liberty Mutual Insurance Company, a corporation existing under the laws of the state of MA, as Surety, hereinafter called Surety, *are held and firmly bound unto Hunt Construction Group, Inc. as obligee,* hereinafter called Obligee, in the amount of Thirty Million Nine Hundred Thirty Eight Thousand One Hundred Ninety Dollars ($30,938,190.00) *for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.*

(Motion **Exhibit 1**, emphasis added.)

6. There are no reciprocal terms in the Bond affirmatively obligating Hunt to Liberty that could expose Hunt to an affirmative claim for damages.

7. Nor is the question whether Hunt can "breach" any obligations under the Bond. The point is that any obligations Hunt has under the Bond are *conditions precedent* to its right to seek the benefits of the Bond. Any such "breaches" by Hunt can, at most, relieve Liberty of its own liability under the Bond; they do cannot give rise to an independent cause of action.

8. Indeed, to emphasize that point, the express terms of the Bond itself preclude any action by anyone other than Hunt under the Bond:

> No right of action shall accrue on this bond to or for the use of *any person or corporation other than the Obligee* named herein or the heirs, executor, administrators, or successors of the Obligee.

(**Exhibit 1**, emphasis added.)

9. Hunt is that obligee, and the rights created under the Bond are Hunt's to have or to lose. Liberty may attempt to escape its own liability under the Bond, but it cannot impose affirmative liability on Hunt, the obligee.

## II. TEXAS LAW DOES NOT RECOGNIZE A SURETY'S AFFIRMATIVE CLAIM FOR DAMAGES AGAINST A BOND OBLIGEE, AND LIBERTY'S RESPONSE FAILS TO CITE ANY PRECEDENT TO THE CONTRARY.

10. The legal principle that a performance bond surety has no cause of action for affirmative monetary relief against an obligee is precisely what the court held in *Gulf Liquids New River Project, LLC v. Gulsby Engineering, Inc.*, 356 S.W.3d 54, (Tex. App. – Houston, 2011). There, the surety of payment and performance bonds attempted to bring affirmative claims for damages under a breach-of-contract theory against the bond's obligee. *Id*. at 82-83.

11. The court rejected those claims, holding that breaches by the bond obligee may amount to affirmative defenses relieving the surety of its own liability under the bond but do not give rise to an affirmative cause of action for monetary relief against the obligee. *Id*. The court's decision also specifically noted the absence of any case authority supporting a surety's affirmative claim for damages against a bond obligee. *Id*.

12. Liberty's response confirms Hunt's premise. It fails to cite a single case in which a court recognized an affirmative cause of action for monetary relief by a surety against an obligee based on a performance bond. Instead, Liberty repeatedly cites to cases showing only that an obligee's failure to meet certain conditions precedent to the surety's performance may excuse the surety's own liability under the bond. None of them finds in favor of an independent cause of action for damages against the obligee.

13. Thus, Liberty cites the non-Texas cases *School Bd. of Escambia County v. TIG Premier Ins. Co.*, 110 F. Supp. 2d 1351, 1354 (N.D. Fla. 2000); *Balfour Betty Constr. Inc. v. Colonial Ornamental Iron Works, Inc.*, 986 F. Supp. 82, 86 (D. Conn. 1997); *Ins. Co. of N. Am. v. Metropolitan Dade County*, 705 So. 2d 33, 34-35 (Fla. 3rd DCA 1997); *Hunt Const. Group, Inc. v. National Wrecking Corp.*, 542 F. Supp. 2d 87, 95-96 (D.D.C. 2008); and *Stonington*

*Water Street Assoc., LLC v. Hodess Bldg. Co., Inc.*, 792 F. Supp. 2d 253, 267 (D. Conn. 2011) for the proposition that an obligee can "breach" a performance bond. Yet, as just noted, not one of those cases involves an *affirmative claim for damages* by a surety against a performance bond obligee.

14. To be sure, Liberty cites one case, decided under New York law, *T. Mina Supply, Inc. v. Clemente Bros. Contracting Corp.*, 139 A.D.3d 1040, 1041, 34 N.Y.S 3d 82, 84 (N.Y. App. Div. 2016), which Liberty incorrectly characterizes as "expressly [holding] that the surety may bring an affirmative breach of contract claim against the performance bond obligee." (Response, ¶ 18.)

15. *T. Mina Supply* is not binding authority here and cannot overcome the clear Texas precedent in *Gulf Liquids*. But even if the case had any authority here, it does not support Liberty's claim.

16. In *T. Mina Supply*, the court held, in a single conclusory sentence, without any reasoning, analysis, or explanation, that a valid cause of action existed for a *payment bond* surety against an obligee. 139 A.D.3d at 1041, 34 N.Y.S. 3d at 84.

17. Contrary to Liberty's mischaracterization, the surety's claim and the court's decision in *T. Mona Supply* were based on the surety's *payment bonds*, and not the performance bonds it has issued. *Id.* (stating that the surety's claims alleged that the obligee "exposed [the surety] to liability under the subject *payment bonds* by materially modifying and extending the construction contracts in a manner not permitted by the terms there of.") (emphasis added.)

18. Further, that litigation's subsequent history reveals that the surety's affirmative claim in *T. Mina Supply* was wholly distinguishable from what Liberty alleges in Count I. The surety's claim in *T. Mina Supply* was based on "the surety's attempt to '*recover all amounts it*

5

*has paid or is obligated to pay* under its bonds' from the [obligee] 'due to the [obligee's] breaches of the bonds.'" *T. Mina Supply, Inc. v. Clemente Bros. Contracting Corp.*, No. 231252011, 2017 WL 5652519, at *2 (N.Y. Sup. Ct. 2017) (trial order).

19. In other words, the surety was attempting to claw back amounts it had already paid out under the payment bond.

20. Liberty, on the other hand, does not allege that it paid out anything to Hunt and is not seeking to recover any amounts it paid out under the Bond. Quite the opposite, Liberty admits that it paid nothing out under the Bond, but argues it was "excused from performance." (Response, ¶ 14.)

21. Given that Liberty admits it paid nothing to Hunt under the Bond, its Count I instead seeks to recover its attorneys' fees and consulting fees incurred in *deciding to deny* Hunt's bond claim; that is, its costs of doing business. (Liberty's Am. Counterclaim, ¶ 135). But nothing in the Bond makes Hunt responsible for Liberty's costs of investigating a claim, whether it pays the claim or not.

22. Regardless of what *T. Mina Supply* stands for under New York law, it is in direct conflict with the Texas precedent set out in *Gulf Liquids*, which holds that an obligee's breach of a performance bond may release a surety from liability, but will not amount to an affirmative cause of action for monetary relief against the obligee. *Gulf Liquids,* 356 S.W.3d at 82. Indeed, in disagreement with *T. Mina Supply*, the *Gulf Liquids* court rejected a surety's claim that it could claw back money erroneously paid to the obligee – rather, it must look to the principal for repayment. *Id*. at 81-82.

23. Liberty attempts to distinguish *Gulf Liquids* on the basis that the specific breaches alleged by the surety against the obligee in that case were not the exact same breaches Liberty

alleges against Hunt in Count I, and it urges that *Gulf Liquids* must be limited to a surety's claims of "owner nonpayment" and "material alteration" of the underlying risk.  (Response, ¶ 11.)

24.     That overly-narrow interpretation ignores the court's express language stating that an obligee's breach of a bond can, "at most," relieve the surety of its own liability but not give rise to an affirmative claim for relief:  "Gulf Liquids responds that it did not breach the bonds, and that 'the bonds <u>at most</u> provided NAICO with a defense to its obligations to Gulf Liquids.'  <u>We agree.</u>"  *Gulf Liquids,* 356 S.W.3d at 83 (emphasis added).  The point is not the precise nature of the breach alleged by the surety, but rather that the result of a breach is the surety's relief from its own obligations, and not a right to affirmative monetary relief from the obligee.

25.     *Gulf Liquids* is a directly-relevant, published Texas appellate decision providing a deep, thorough and well-reasoned analysis of the law of surety bonds.  *T. Mina Supply* is a New York case with a single-sentence conclusion, devoid of reasoning or discussion, that a cause of action for breach of a payment bond may be valid under New York law, where the surety has paid the obligee.  This Court should follow *Gulf Liquids*.

## **CONCLUSION**

26.     The Bond is an instrument created by Cobb and Liberty for Hunt's benefit.  Hunt undertook no affirmative obligations to Liberty.  Liberty conditioned its obligation on the occurrence of certain preconditions, some of which were to be supplied by Hunt if it wanted Liberty to perform.  When Cobb defaulted, Hunt made a claim with Liberty under the Bond seeking those benefits.  Liberty responded by hiring attorneys and consultants in the normal course to "investigate" Hunt's Bond claim and now seeks to recoup those expenses without ever paying Hunt a single dollar.

27. Liberty's response fails to cite a single authority permitting the cause of action it alleges in Count I or otherwise negating the clear Texas precedent Hunt has provided. Pursuant to the Bond's express terms, uncontroverted Texas state law, and the absence of any authority supporting the validity of Liberty's cause of action, Hunt respectfully requests that the Court dismiss Liberty's Count I for failure to state a claim on which relief can be granted.

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/Casey Low
Casey Low
401 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 580-9616
casey.low@pillsburylaw.com

Steven G.M. Stein (*admitted pro hac vice*)
C. Steven Tomashefsky (*admitted pro hac vice*)
Andrew J. Donivan (*admitted pro hac vice*)
STEIN RAY LLP
222 West Adams Street, Suite 1800
Chicago, Illinois 60606
(312) 641-3700
sstein@steinraylaw.com
stomashefsky@steinraylaw.com
adonivan@steinraylaw.com

**ATTORNEYS FOR PLAINTIFF
HUNT CONSTRUCTION GROUP, INC.**

Dated: March 26, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Casey Low*
Casey Low
