IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUNT CONSTRUCTION GROUP, INC. | § | |
| | § | |
| VS. | § | NO. A-17-CV-215-LY |
| | § | |
| COBB MECHANICAL CONTRACTORS, | § | |
| INC., and LIBERTY MUTUAL INS. CO. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Liberty Mutual Insurance Company's Motion to Dismiss Count VII of Hunt's Amended Complaint, or Alternatively for More Definite Statement (Dkt. No. 72); Hunt's Opposition (Dkt. No. 76); and Liberty's Reply (Dkt. No. 77). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. FACTUAL BACKGROUND

Hunt Construction Group, Inc. is the general contractor for the Fairmont Austin Hotel construction project. On July 20, 2015, Hunt entered into a subcontract with Defendant Cobb Mechanical Contractors for the project's plumbing, piping, and heating-ventilation-air conditioning scopes of work, for the fixed sum of $30,938,190. Pursuant to the Subcontract, Cobb obtained a performance bond from Liberty Mutual Insurance Co. in the principal sum of $30,938,190, with Hunt as the obligee. The purpose of the performance bond was to insure completion of the Cobb's scope of work in the event Cobb defaulted. Starting In July 2016, Hunt issued a series of default notices to Cobb, and on November 18, 2016, Hunt terminated the subcontract with respect to the

podium portion of the hotel only. At the same time, Hunt notified Liberty of the termination and stated that it intended to arrange for another subcontractor to perform the remainder of Cobb's obligations on the podium and to correct Cobb's defective work on the podium. Blaming Hunt for all delays, on January 31, 2017, Liberty formally denied Hunt's claim under the performance bond.

On March 7, 2017, Hunt filed suit, asserting a breach of contract claim against Cobb, and also a breach of contract claim against Liberty for its refusal to perform under the bond. Dkt. No. 1. Both Cobb and Liberty Mutual answered and counterclaimed. Dkt. Nos. 12 & 13. On February 2, 2018, Hunt filed an Amended Complaint. Dkt. No. 66. The Amended Complaint included new claims of breach of contract and breach of fiduciary duty against Cobb under the Professional Services Agreement, and a fraudulent inducement claim against Cobb. In the instant motion, in addition to challenging the particularity of the fraud allegations, Liberty contends the fraud claim should be dismissed because: (1) it fails to state a claim because it is merely re-labeling the breach of contract claims as a fraud cause of action; (2) the economic loss rule bars the fraud claim; and (3) Cobb's partial performance negates the fraud claim. Hunt responds that: (1) it has stated a valid fraudulent inducement claim based upon specific representations within the Subcontract upon which it relied in entering into the agreement; (2) Hunt's fraud claim is not duplicative of its breach of contract claim and not barred by the economic loss rule; and (3) Liberty does not have standing to move to dismiss the claim, because the claim only names Cobb, not Liberty.

## II. MOTION TO DISMISS STANDARD

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted),

*cert. denied*, 552 U.S. 1182 (2008). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

Additionally, Rule 9(b) imposes a heightened pleading requirement for a fraud claim and requires a party that alleges fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (citations and internal quotation marks omitted*); see also U.S. ex rel. Willard v. Humana Health Plan of Texas*, 336 F.3d 375, 384 (5th Cir. 2003). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

### III. ANALYSIS

**A.     Liberty's Standing to Raise this Issue**

Noting that Liberty is seeking to dismiss a claim that has not been brought against it, but rather a claim brought against co-defendant Hobb, Hunt challenges Liberty's standing to file this motion. Liberty responds that the argument is baseless because the Court has the power to dismiss a fraud claim on its own motion, relying on *Spring Street Apts. Waco, LLC v. Philadelphia Indemnity Ins. Co.*, 2017 WL 524428 (W.D. Tex. April 5, 2017). Liberty is correct that a federal district court

3

can, on its own initiative and unprompted by the parties, consider the sufficiency of a complaint and dismiss a complaint *sua sponte* for failure to state a claim upon which relief can be granted. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991). The important difference here, however, is that the Court has not chosen to raise the issue itself, but instead the issue has been raised by Liberty.

A federal court's jurisdiction is limited to adjudication of "cases" and "controversies." U.S. CONST. ART. III; *Flast v. Cohen*, 392 U.S. 83, 95 (1968). A court has no subject matter jurisdiction over a non-justiciable issue. *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). Further, for a party to have standing to sue, the dispute must be real, not hypothetical, and the plaintiff must be personally affected. *KVUE, Inc. v. Moore*, 709 F.2d 922, 928 (5th Cir. 1983). Though the Court clearly has subject matter jurisdiction over this case as a whole, that does not mean it would a wise exercise of its inherent power to take up a motion to dismiss not raised by the party the claim has been made against. Indeed, the fact that Cobb has not even joined Liberty's motion seems telling. Regardless, the Court does not believe that simply because it *could* raise this issue *sua sponte* means that it would be wise to do so. For this reason, then, the undersigned believes Liberty's motion to dismiss should be denied. Though this alone would be an adequate basis on which to deny the motion, the Court will take up the merits of the motion, as the motion fails on that basis as well.

**B.     Whether the Amended Complaint States a Fraudulent Inducement Claim**

Count VII of the Amended Complaint, titled "Fraud Against Cobb," contains the allegations at issue here. In its entirety, it states:

> 93.     Hunt hereby incorporates paragraphs 1-11, 13, 25-27, 31, and 58 above in this Count VII as though fully restated herein.

94. In the Subcontract, Cobb represented to Hunt that it had "investigated and satisfied itself with respect to . . . the availability and adequacy of personnel and workers and the prevailing wage scales . . . ." (Subcontract § 3.5.)

95. Further, in the Subcontract Cobb represented and warranted to Hunt that it "is experienced in performing the type, quality and quantity of work required for performance of this Subcontract, . . . and has sufficient management, supervision and labor capacity to properly perform this Subcontract." (Subcontract § 3.9.)

96. Contrary to those representations and warranties, Cobb did not have adequate personnel and workers at the prevailing wage scales to work on the Project, nor did it have sufficient management and labor capacity to perform the Subcontract. Rather, it consistently short-staffed the Project and relied on day-labor agencies for staffing, which did not and could not provide the numbers of qualified staff necessary for a project of this type and scope.

97. Cobb thus fraudulently induced Hunt to enter into the Subcontract by falsely representing and warranting to Hunt that it would be able to staff the Project at levels required to perform the Subcontract. Cobb did not in good-faith believe that it could provide sufficient numbers of qualified personnel at the wages it was willing to pay, and in fact it was unable to do so.

98. The Subcontract should, therefore be rescinded, and Hunt should be entitled to its out of-pocket or benefit-of-the-bargain damages in an amount to be proven at trial, plus punitive damages.

(Dkt. No. 66 at 26-27). Liberty argues these allegations are insufficient to state a claim for fraud under Texas law. Hunt responds that it is a proper statement of a fraudulent inducement claim.

The elements of a fraud cause of action under Texas law are: (1) a material misrepresentation; (2) that was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) suffered injury. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001). Fraudulent inducement "is a particular species of fraud that arises only in the

context of a contract, and the elements of fraud must be established as they relate to an agreement between the parties." *West v. Northstar Fin. Corp.*, 2010 WL 851415, at *5 (Tex. App.—Ft. Worth Mar. 11, 2010).

As noted in the quoted language from the complaint, Hunt relies on §§ 3.5 and 3.9 of the Subcontract to support its fraudulent inducement claim. Hunt contends those sections contain two representations made by Cobb that were made with knowledge that they were false: (1) that Cobb had investigated and satisfied itself with respect to the availability and adequacy of personnel and workers at the prevailing wage scales; and (2) that Cobb had sufficient management, supervision, and labor capacity to properly perform the Subcontract. Hunt asserts that it relied on these false representations in entering into the Subcontract, would not have entered into the Subcontract had it known these representations to be false, and suffered injury because it failed to locate another Subcontractor who had the requisite manpower and skills to perform the Subcontract.

These allegations are sufficient to make out a fraudulent inducement claim. In its most common presentment, a fraudulent inducement claim based on contract language (as opposed to pre-contract statements) alleges that the defendant promised in the contract to do something that he had no intention of doing. *See, e.g., Crim Truck & Tractor Co. v. Navistar Internat'l Transp, Co.* 823 S.W.2d 591, 597 (Tex. 1992). However, a fraudulent inducement claim can also be based on representations of present or past facts, stated in the contract, made to induce the other party to enter into the agreement, and which turn out to have been false. *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003). That is the claim made here. Like many contracts, the contract between Hunt and Cobb contained an entire section dedicated to representations and warranties. Among those are the two noted above. Hunt contends that Cobb represented that it had

6

inquired into the local personnel market, and there were sufficient numbers of qualified workers at the relevant wage scale to get the work done on time, when in fact "Cobb did not in good-faith believe that it could provide sufficient numbers of qualified personnel at the wages it was willing to pay." Dkt. No. 66 at ¶ 97. In *Benchmark* the Fifth Circuit was faced with a similar claim, where the plaintiff was suing for fraudulent inducement based on a number of detailed—but false—representations made in a stock purchase agreement. The court held that such a claim was available, explaining that "Texas law permits . . . allegations of fraudulent inducement or fraud arising from false representations contained in the contract. . . . " *Benchmark*, 343 F.3d at 729. And just like the representations here, the representations in *Benchmark* were not promises to perform in the future, but instead were statements of the party's existing financial condition.

## C. The Applicability of the Economic Loss Rule

Liberty next argues that the economic loss rule bars Hunt's fraudulent inducement claim. Hunt responds—correctly—that in Texas the economic loss rule is inapplicable to fraudulent inducement claims. Although a party's actions may breach duties in tort, contract, or both, Texas has long recognized that "mere nonfeasance under a contract creates liability only for breach of contract." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex.1996); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes*, 711 S.W.2d at 618. However, in *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex. 1998), the Texas supreme court declined to apply the independent injury requirement to a fraudulent inducement claim. The court held, "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a

7

contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id.* at 47. Because Hunt has adequately pled a fraudulent inducement claim, the economic loss rule is inapplicable and does not bar the claim.

**D.      Cobb's Partial Performance**

Last, Liberty asserts that Cobb's partial performance of, and ongoing work on, the Subcontract bar Hunt's fraud claim, as such conduct is inconsistent with the assertion that Cobb had the intent not to perform when it entered into the contract with Hunt. This argument relies on a flawed assumption, however. The assumption is that Hunt is basing its fraudulent inducement cause of action on the theory that Cobb made promises in the contract that it did not intend to perform. As the Court has already explained, that is not the claim that Hunt is making. Instead, Hunt is making the claim that Cobb made affirmative representations in the contract regarding its investigation into the labor market, and what that investigation showed, and Cobb made those statements knowing they were false. There is no requirement in this type of fraudulent inducement claim that Hunt show that Cobb had no intention of performing, as the claim is not based on a promise of future performance. In a similar recent case, a district court in the Northern District of Texas explained the difference:

> Trinity has attempted to characterize Interval's claim as an "allegation that Trinity made promises to complete the transformation project at some point in the future, but that it knowingly, fraudulently, had no intention of doing so." In its complaint, however, Interval does not assert its claim of fraudulent inducement based on Trinity's assurance of future performance, rather it asserts its claim based on Trinity's assurance of then-present qualifications, capacity, and general ability to complete the job. In other words, Interval does not allege there was a false promise that Trinity *would* complete the job, but instead that there was a false promise that Trinity *could* complete the job. Furthermore, Interval has sufficiently alleged with specificity what statements were made, who made the statements, when they were made, and that it relied on the statements. If, as alleged, these representations were knowingly false and were made with the intent to induce Interval into entering into an agreement it otherwise would not have agreed to, then there is actionable fraud.

8

*Interval Internat'l Inc. v. Trinity Millenium Group, Inc.*, 2016 WL 7395340 *4 (N. D. Tex., Jan. 26, 2016) (emphasis original, citations omitted). The same is the case here.

### E.   Particularity and Rule 9

The Court need not spend much time on this issue. It is fundamental that fraud must be pled with a higher level of particularity than other claims. FED. R. CIV. P. 9(b). This requires the plaintiff to plead the "who, what, when, where, and how of the alleged fraud." *Steury*, 625 F.3d at 266. Hunt has plainly met this standard, as the "who what, when and where" elements are quite simple here: the two false statements are actually in the parties' contract, so they are quoted verbatim. They were made when and where the contract was signed, by Cobb through its authorized representative. As for the "how" element, Hunt clearly states that the statements were false because Cobb "did not in good-faith believe that it could provide sufficient numbers of qualified personnel at the wages it was willing to pay, and in fact it was unable to do so." Dkt. No. 66 at ¶ 97. Hunt has met the pleading standard of Rule 9(b) with its fraudulent inducement claim.

## III.   RECOMMENDATIONS

For the reasons set forth above, the Court **RECOMMENDS** that Defendant Liberty Mutual Insurance Company's Motion to Dismiss Count VII of Hunt's Amended Complaint, or Alternatively for More Definite Statement (Clerk's Dkt. No. 72) be **DENIED.**

## IV.   WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 26th day of June, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE