IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUNT CONSTRUCTION GROUP, INC. | § | |
| | § | |
| VS. | § | NO. A-17-CV-215-LY |
| | § | |
| COBB MECHANICAL CONTRACTORS, | § | |
| INC., and LIBERTY MUTUAL INS. CO. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Hunt Construction Group, Inc.'s Motion to Dismiss Count I of Liberty Mutual Insurance Company's Amended Counterclaim (Dkt. No. 74); Defendant Liberty Mutual Insurance Company's Response (Dkt. No. 79); and Hunt's Reply (Dkt. No. 81). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. FACTUAL BACKGROUND

This suit involves a claim by Hunt Construction Group, Inc. against Liberty Mutual Ins. Co. based on a surety bond Liberty provided to Hunt to insure the performance of Hunt's mechanical sub, Cobb Mechanical Contractors, on Hunt's Fairmont Austin Hotel construction project.[1] Starting in July 2016, Hunt issued a series of default notices to Cobb, and on November 18, 2016, Hunt terminated the subcontract with respect to what has been termed the "podium" portion of the hotel. At the same time, Hunt notified Liberty of the termination and informed Liberty it intended to arrange for another subcontractor to perform the remainder of Cobb's obligations and correct

---

[1] Hunt also sues Cobb directly, alleging that Cobb breached its sub-contract with Hunt, but those claims are not at issue on the motion presently before the Court.

defective work on the podium. After several months of investigation and review of Hunt's claim, on January 31, 2017, Liberty formally denied the claim under the performance bond and informed Hunt that the bond had been "released." Dkt. No. 74 at 1. Liberty neither hired another mechanical subcontractor to complete Cobb's work, nor did it reimburse Hunt for the monies Hunt paid Brandt Co. to complete the podium work.

On March 7, 2017, Hunt filed suit, asserting a claim against Cobb that it had breached the subcontract between Cobb and Hunt, and making a breach of contract claim against Liberty for its failure to perform under the bond. Dkt. No. 1. Both Cobb and Liberty Mutual answered and counterclaimed. Dkt. Nos. 12 & 13. On February 2, 2018, Hunt filed an Amended Complaint adding a number of claims against Cobb only. Dkt. No. 66. On February 19, 2018, Liberty filed its Answer and Amended Counterclaim. Dkt. No. 73. Hunt now moves to dismiss Count I of Liberty's Amended Counterclaim, in which Liberty sues Hunt for allegedly breaching the surety bond. Dkt. No. 73 at 13.

## II. MOTION TO DISMISS STANDARD

To obtain relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a movant must show that the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed

factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing the motion, a court must take all well-pleaded facts in the complaint as true, and view them in the light most favorable to the plaintiff, and may not look beyond the pleadings, though it may consider documents attached to the complaint. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Here, that means that the Court may consider and rely on the surety bond itself, as Liberty's counterclaim is founded on the bond, and the bond has been submitted by Hunt with its motion to dismiss. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

### III. ANALYSIS

Hunt argues that Count I of Liberty's counterclaim fails to state a claim for two reasons. First, it asserts that Texas law does not recognize a breach of contract claim by a surety against a bond obligee. Hunt notes that it is not even a signatory to the bond—only Cobb and Liberty are—and further notes that the bond does not impose any obligations on it. Second, Hunt argues that even if Liberty could assert a breach of contract claim against Hunt, Liberty has failed to state a breach of contract claim, because it failed to allege its own performance under the bond, it fails to allege any breach by Hunt, and it fails to allege it suffered any compensable damages. Liberty responds that a bond is a contract subject to the law of contracts, and that under that law Hunt

breached the performance bond by unilaterally hiring a completion contractor. Liberty also contends that it has adequately pled the elements of a breach of contract claim.

A.     **May a Surety Sue a Bond Obligee under Texas Law?**

Hunt first argues that Liberty's breach of contract claim fails because Texas law does not recognize an affirmative claim for damages by a surety against a bond obligee. It points out that the bond is a one-way agreement in which Liberty makes promises to Hunt, but which contains no reciprocal promises by Hunt back to Liberty. As a result, Hunt argues that it cannot be sued for breach of contract under the bond, since the bond imposes no affirmative obligations on it. Hunt is correct. As the Houston 1st Court of Appeals noted in the *Gulf Liquids* case, "Gulf Liquids responds that it did not breach the bonds, and that 'the bonds at most provided [the surety] with a defense to its obligations to Gulf Liquids.' ***We agree***." *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 83 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (emphasis added). The court explained that while certain actions by a general contractor might provide the surety with a *defense* to the contractor's claims against the surety, that's the most that is available to the surety. As it noted, the surety "cite[d] no case holding that [those actions] will support a direct claim for damages against the owner by the surety." *Id*. The same is the case here. Liberty fails to cite any cases that support its position, as none of those cases involved an affirmative breach of contract claim.[2]

This of course makes perfect sense, given the nature of a construction performance bond. This type of bond is a contract between a surety and a subcontractor in which the surety promises

---

[2]As Hunt points out in its reply, though one of the cases Liberty cites (a trial court case out of New York) purports to hold that a surety may sue the obligee for breach of contract under a *payment* bond, that decision contains no explanation for how the court reached that conclusion, and the facts of that case are distinguishable from this case. *See T. Mina Supply, Inc. v. Clemente Bros. Contracting Corp.*, 2017 WL 5652519, at *2 (N.Y. Sup. Ct. 2017).

that in the event the subcontractor defaults on its obligations to the general contractor, it will either perform the subcontractor's obligations or reimburse the general contractor for performing the sub's obligations. Thus, while the general contractor is a *beneficiary* of the bond, it takes on no affirmative obligations under a performance bond. A party that takes on no affirmative obligations under an agreement obviously cannot be sued for breach of the agreement—it is logically impossible for a party to breach a contract that imposes no obligations on that party. This conclusion makes even more sense here, where Liberty concedes that it has not paid one cent to anyone under the performance bond. Instead, it investigated Hunt's claim and notified Hunt that it would not be performing under the bond as a result of Hunt's decision to hire its own replacement contractor (as well as for other reasons). Liberty's position all along has been that Hunt's actions excused it from having to perform under the bond. This is what the law characterizes as a defense, not an affirmative claim. Moreover, the language of the bond confirms this, as it states that the only party that can sue under the bond is Hunt, the obligee: "No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or the heirs, executors, administrators, or successors of the Obligee." Dkt. No. 74-1 at 2.

Thus, while Liberty may raise an affirmative defense that Hunt's actions excused Liberty's obligation to perform under the surety bond, Texas law does not provide it with an affirmative breach of contract claim. Count I of Liberty's Amended Counterclaim should therefore be dismissed for failure to state claim. Given this result, the Court need not address Hunt's argument that, even if a breach of contract claim is available to Liberty, Liberty has failed to properly plead that claim.

## III. RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that Plaintiff Hunt Constriction Group, Inc.'s Motion to Dismiss Count I of Liberty Mutual Insurance Company's Amended Counterclaim (Dkt. No. 74) be **GRANTED** and Count I of Liberty Mutual Insurance Company's Amended Counterclaim be **DISMISSED** for failure to state a claim on which relief may be granted.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of October, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE